# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATE WEISSMAN,<br><br>Plaintiffs,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICE, LLC, AND INTERPUBLIC GROUP OF COMPANIES, INC. CHOICE PLUS PLAN,<br><br>Defendants. | CIVIL ACTION NO.<br><br><br><br><u>CLASS ACTION</u><br>COMPLAINT |

## INTRODUCTION

Plaintiff Kate Weissman brings this action individually and on behalf of all others similarly situated ("the Class Members") against Defendants UnitedHealthcare Insurance Company, UnitedHealthcare Service, LLC (collectively "UnitedHealthcare"), and Interpublic Group of Companies, Inc. Choice Plus Plan ("the Plan"), and hereby alleges the following on information and belief, except as to those allegations that pertain to Ms. Weissman, which are alleged on personal knowledge:

## NATURE OF THE ACTION

1.     Ms. Weissman brings this action for herself and those similarly situated to challenge UnitedHealthcare's deceptive and fraudulent misrepresentations to its ERISA plan participants and beneficiaries that it would deliver access to covered, medically necessary healthcare for the treatment of cancer, and to challenge UnitedHealthcare's deceptive and unfair administration of its ERISA plans, including its prior authorization and utilization review process

for plan members seeking proton beam therapy, and its adjudication and administration of claims for proton beam therapy made under ERISA plans underwritten and administered by UnitedHealthcare, which skews the determination of coverage for medically necessary services towards denial.

## JURISDICTION AND VENUE

2.  This action is brought under 29 U.S.C. §§ 1132(a), (e), (f), and (g) of the Employee Retirement Income Security Act of 1974 ("ERISA"), as it involves claims for breach of fiduciary duty under employee benefit health plans regulated and governed under ERISA.  Jurisdiction is predicated under these Code sections as well as 28 U.S.C § 1331, as this action involves a federal question.

3.  Ms. Weissman's claims in this action were specifically administered in this judicial district, and Ms. Weissman resides or may be found in this judicial district, the Eastern District of Massachusetts.  Thus, venue is proper in this judicial district pursuant to 29 U.S.C. § 1132(e)(2) (special venue rules applicable to ERISA).

## THE PARTIES

4.  Ms. Weissman is a citizen of the Commonwealth of Massachusetts and resides in Suffolk County.  Ms. Weissman is and was at all relevant times a participant in the Plan, a group health plan governed by ERISA that is provided and funded by Ms. Weissman's employer, and administered by UnitedHealthcare, pursuant to which Ms. Weissman is entitled to health care benefits.

5.  Defendant UnitedHealthcare Insurance Company is and was at all relevant times a corporation duly organized and existing under the laws of the State of Connecticut, with its principal place of business located in Connecticut.  UnitedHealthcare Insurance Company is

authorized to conduct business as a health care plan provider and insurer, and transacts, and is transacting, the business of providing, administering and insuring health plans to consumers in this judicial district.

6. Defendant UnitedHealthcare Service, LLC is and was at all relevant times a corporation duly organized and existing under the laws of the State of Delaware, with its principal place of business located in Wilmington, Delaware. UnitedHealthcare Service, LLC is authorized to conduct business as a health care plan provider and insurer, and transacts, and is transacting, and is in the business of providing, administering and insuring health plans to consumers in this judicial district.

7. Defendant Interpublic Group of Companies, Inc. Choice Plus Plan ("the Plan") is a self-funded group health plan organized and regulated under ERISA. The Plan Administrator is located in New York, New York.

8. UnitedHealthcare is an ERISA fiduciary with respect to Ms. Weissman's plan and the plans of all putative class members in that UnitedHealthcare exercises discretionary authority or discretionary control with respect to the management of the plans; exercises discretionary authority or discretionary control with respect to the management or disposition of the assets of the plans; or has discretionary authority or discretionary responsibility in the administration of the plans. 29 U.S.C. § 1002(21)(A).

9. Each of the defendants acted in concert, is responsible for and committed the course of conduct described herein, including but not limited to the following:

    a. UnitedHealthcare drafted and implemented medical policy no. T0132 for proton beam radiation therapy ("PBT") that relies upon outdated medical evidence, ignores contemporary medical evidence, and relies more heavily on actuarial calculation of risk pools

insofar as policy no. T0132 provides that PBT is covered for insured members younger than 19 years of age and those 65 years of age and older.

   b. UnitedHealthcare drafted and implemented policies and procedures for prior authorization review and the adjudication of insured members' claims that provide for an inadequate review of clinical records by its medical directors prior to rendering a determination of coverage.

   c. UnitedHealthcare compounds its bad faith breach of fiduciary duties, and confounds learned health care providers, by having policy no. T0132 reviewed and applied to insured members' requests for prior authorization and in the adjudication of insured members' claims by medical directors who are unqualified to render determinations of coverage for PBT, including medical directors who are not board certified in the requisite specialty.  This particular breach of fiduciary duty is the result of UnitedHealthcare's systemic, institutional abdication of its duty to screen, conduct background checks, review available public records through state medical licensing boards, and conduct meaningful interviews of qualified candidates before employing candidates as medical directors who are charged with making life and death decisions for members who are entirely reliant upon the Plan for timely access to medically necessary services.

   d. By placing policy no. T0132 in the hands of medical directors who are not qualified to render opinions as to the medical necessity of PBT; who lack the education, training and experience to appreciate factors in a given case that indicate the medical necessity for PBT; who are unaware of contemporary medical evidence in the requisite specialty indicating the medical necessity for PBT; and who follow the inadequate policies and procedures for clinical review, UnitedHealthcare categorically denies all prior authorization requests and claims for PBT for all types of cancers on policy no. T0132's "not indicated" list, including gynecologic cancers.

## THE PLAN

10. Ms. Weissman is and was at all relevant times covered by the Plan. The relevant terms of the Plan are as follows:

> **SECTION 3 - HOW THE PLAN WORKS**
> **Accessing Benefits**
> As a participant in this Plan, you have the freedom to choose the Physician or health care professional you prefer each time you need to receive Covered Health Services. …
> You can choose to receive Network Benefits or non-Network Benefits.
> Network Benefits apply to Covered Health Services that are provided by a Network Physician or other Network provider.
> …
> Non-Network Benefits apply to Covered Health Services that are provided by a non- Network Physician or other non-Network provider, or Covered Health Services that are provided at a non-Network facility.
> …
> **Eligible Expenses**
> The Plan Administrator has delegated to UnitedHealthcare the discretion and authority to decide whether a treatment or supply is a Covered Health Service and how the Eligible Expenses will be determined and otherwise covered under the Plan.
> …
> **SECTION 8 - EXCLUSIONS AND LIMITATIONS: WHAT THE MEDICAL PLAN WILL NOT COVER**
> The Plan does not pay Benefits for the following services, treatments or supplies even if they are recommended or prescribed by a provider or are the only available treatment for your condition.
> …
> **Experimental or Investigational or Unproven Services**
> 1. Experimental or Investigational Services and Unproven Services, unless the Plan has agreed to cover them as defined in Section 14, Glossary.
> …
> **Your Relationship with UnitedHealthcare and Interpublic**
> In order to make choices about your health care coverage and treatment, Interpublic believes that it is important for you to understand how UnitedHealthcare interacts with the Plan Sponsor's benefit Plan and how it may affect you. UnitedHealthcare helps administer the Plan Sponsor's benefit plan in which you are enrolled. …
> **SECTION 14 – GLOSSARY**

…

**Claims Administrator** - UnitedHealthcare (also known as UnitedHealthcare Service LLC.) and its affiliates, who provide certain claim administration services for the Plan.

…

**Covered Health Services** - those health services, including services or supplies, which the Claims Administrator determines to be:
- Provided for the purpose of preventing, diagnosing or treating Sickness, Injury, Mental Illness, Substance-Related and Addictive Disorders Services, or their symptoms.
- Included in Section 5, Plan Highlights and Section 6, Additional Coverage Details.
- Provided to a Covered Person who meets the Plan's eligibility requirements, as described under Eligibility in Section 2, Introduction.
- Not identified in Section 8, Exclusions.

The Claims Administrator maintains clinical protocols that describe the scientific evidence, prevailing medical standards and clinical guidelines supporting its determinations regarding specific services.

…

**Experimental or Investigational Services** - medical, surgical, diagnostic, psychiatric, mental health, substance-related and addictive disorders or other health care services, technologies, supplies, treatments, procedures, drug therapies, medications or devices that, at the time the Claims Administrator and the Plan Administrator make a determination regarding coverage in a particular case, are determined to be any of the following:
- Not approved by the U.S. Food and Drug Administration (FDA) to be lawfully marketed for the proposed use and not identified in the American Hospital Formulary Service or the United States Pharmacopoeia Dispensing Information as appropriate for the proposed use.
- Subject to review and approval by any institutional review board for the proposed use. (Devices which are FDA approved under the Humanitarian Use Device exemption are not considered to be Experimental or Investigational.)
- The subject of an ongoing Clinical Trial that meets the definition of a Phase I, II or III Clinical Trial set forth in the FDA regulations, regardless of whether the trial is actually subject to FDA oversight.

Exceptions:
- Clinical Trials for which Benefits are available as described under Clinical Trials in Section 6, Additional Coverage Details.
- If you are not a participant in a qualifying Clinical Trial as

described under Section 6, Additional Coverage Details, and have a Sickness or condition that is likely to cause death within one year of the request for treatment, the Claims Administrator and the Plan Administrator may, at their discretion, consider an otherwise Experimental or Investigational Service to be a Covered Health Service for that Sickness or condition. Prior to such consideration, the Claims Administrator and the Plan Administrator must determine that, although unproven, the service has significant potential as an effective treatment for that Sickness or condition.

…

**Unproven Services** - health services, including medications that are determined not to be effective for treatment of the medical condition and/or not to have a beneficial effect on health outcomes due to insufficient and inadequate clinical evidence from well-conducted randomized controlled trials or cohort studies in the prevailing published peer-reviewed medical literature.
- Well-conducted randomized controlled trials are two or more treatments compared to each other, with the patient not being allowed to choose which treatment is received.
- Well-conducted cohort studies from more than one institution are studies in which patients who receive study treatment are compared to a group of patients who receive standard therapy. The comparison group must be nearly identical to the study treatment group.

UnitedHealthcare has a process by which it compiles and reviews clinical evidence with respect to certain health services. From time to time, UnitedHealthcare issues medical and drug policies that describe the clinical evidence available with respect to specific health care services. These medical and drug policies are subject to change without prior notice. …
- If you have a life threatening Sickness or condition (one that is likely to cause death within one year of the request for treatment), UnitedHealthcare and the Plan Administrator may, at their discretion, consider an otherwise Unproven Service to be a Covered Health Service for that Sickness or condition. Prior to such a consideration, UnitedHealthcare and the Plan Administrator must first establish that there is sufficient evidence to conclude that, albeit unproven, the service has significant potential as an effective treatment for that Sickness or condition.

The decision about whether such a service can be deemed a Covered Health Service is solely at UnitedHealthcare's and the Plan Administrator's discretion.

…

**SECTION 15 – ERISA**
**Claims Administrator**
UnitedHealthcare is the Plan's Claims Administrator. The Claims Administrator is authorized and responsible for receiving and reviewing claims for benefits under the Plan; determining what amount, if any, is due and payable; making appropriate disbursements to persons entitled to benefits under the Plan; and reviewing and determining denied claims and appeals.

**PROTON BEAM RADIATION THERAPY**

12. Contrary to UnitedHealthcare's systematic denial of PBT as "experimental or investigational or unproven," PBT is an established form of treatment that is widely accepted by physicians, government agencies and many insurers and other payers, including Medicare and Medicaid (which by statute do not cover investigational or experimental services).

13. The invention of PBT is credited to Physicist Robert Wilson, who first described it theoretically in 1946. By the 1950's, some health care facilities were using PBT to treat certain types of cancers. The FDA approved PBT in 1988 for the treatment of cancer.

14. PBT is one of the most advanced types of radiation treatment that targets the cancerous site in the patient's body and uses proton beams to eradicate the cancer cells. PBT uses a beam of accelerated subatomic particles to destroy cancerous tissue. The protein beam damages the DNA in cancer cells in a way that causes the cell to cease functioning. The cancer cell then begins to break itself down through a process known as apoptosis or programmed cell death.

15. A significant benefit of PBT is that it is extremely precise. Unlike traditional radiation therapy, such as intensity-modulated radiation therapy ("IMRT"), the beam used in PBT can be adjusted and shaped to match the size and shape of the cancerous tissue to be destroyed, while not killing healthy tissue beyond a pre-determined scope and depth.

16. Given the choice between PBT or IMRT, UnitedHealthcare systematically

determines IMRT is more appropriate than PBT for those cancers on policy no. T0132's "not indicated" list.  Not surprisingly, IMRT is about half the cost of PBT.

17. UnitedHealthcare's breaches of its fiduciary duties unfairly forces its insureds, like Ms. Weissman, to choose between receiving traditional therapy, like IMRT, which UnitedHealthcare will cover, but will also increase the risk of comorbidities, or paying out-of-pocket, $95,000.00 in Ms. Weissman's case, and receive the PBT recommended by board certified oncologists that will spare healthy tissue and organs.  Ms. Weissman knows that there are those less fortunate than she who cannot afford to have such a choice, and for this reason she brings this action on behalf of the Class Members as well.

### KATE WEISSMAN

18. Ms. Weissman was born on July 6, 1985, the younger of two daughters to Bob and Cindy Weissman.  She attended Dickinson College in Carlisle, Pennsylvania, where she played women's lacrosse and met Matt Eonta, a pitcher on the baseball team, with whom she graduated in 2007 and married on June 22, 2013.

19. In October 2015, at the age of 30, Ms. Weissman was diagnosed with Stage IIB squamous cell carcinoma of the cervix.  She underwent traditional treatment including chemo radiation of weekly cisplatin, pelvic radiation, and tandem and ovoid brachytherapy that she completed in December, 2015, with complete clinical response.

20. Unfortunately, a PET/CT Scan, obtained on March 8, 2016, revealed two small lymph nodes at the edge of the prior treatment field in the para-aortic region, which biopsy confirmed was squamous cell carcinoma.  Ms. Weissman underwent laparoscopic resection of the two lymph nodes on April 6, 2016.

21. Ms. Weissman was referred to Andrea L. Russo, M.D., Assistant Professor,

Harvard Medical School, Department of Radiation Oncology, Massachusetts General Hospital ("MGH") for consideration of PBT. Dr. Russo, along with Ms. Weissman's multi-disciplinary care team at Dana-Farber Cancer Institute ("DFCI"), determined that adjuvant radiotherapy with weekly cisplatin to the para-aortic lymph nodes, matched inferiorly to the top of her prior pelvic radiation field, would be in Ms. Weissman's best interest. Ms. Weissman's doctors concluded that PBT, for at least a portion of the treatment course, was essential for the following reasons:

    a.    The para-aortic lymph nodes lied directly between both kidneys and posterior to the small bowel;

    b.    An IMRT plan but could not meet the bowel metrics and, therefore, Ms. Weissman was at significant risk of bowel toxicity with IMRT therapy;

    c.    The bowel metrics could be substantially reduced using PBT;

    d.    An IMRT plan but could not meet the bone marrow metrics, which was extremely important since Ms. Weissman had received prior cisplatin and would receive additional cisplatin as a radio-sensitizing agent during treatment;

    e.    Published data has shown that PBT can significantly reduce the dose to bone marrow, bladder, and small bowel compared to IMRT in patients with gynecologic cancer; and

    f.    A study looking at IMRT to treat para-aortic recurrences concluded there was still a 19% risk of late GI toxicity, which would be significantly reduced with PBT since the entire bowel anterior to the treatment field would be spared.

22.    Pursuant to the terms and conditions of the Plan, Ms. Weissman's health care providers contacted UnitedHealthcare and requested prior authorization for Ms. Weissman's treatment plan, including PBT.

23.    In a letter dated April 6, 2016, UnitedHealthcare denied coverage for Ms.

Weissman's PBT.

24.	UnitedHealthcare's denial was based upon policy no. T0132, effective date December 1, 2015, and its determination that the PBT is an "unproven procedure." Quite clearly from the letter, UnitedHealthcare's medical director simply looked at Ms. Weissman's diagnosis of cervical cancer and then looked at the "not indicated" listed in policy no. T0132, and concluded: "You have cervix cancer. We looked at your health plan medical criteria for radiation therapy. This treatment does not meet criteria for coverage. It has not been proven that this treatment is more effective than standard radiation for your medical condition."

25.	A copy of the denial letter was mailed to Ms. Weissman and to Dr. Russo at MGH. Ms. Weissman and Dr. Russo appealed UnitedHealthcare's denial pursuant to the terms of the Plan.

26.	In a letter dated April 12, 2016, UnitedHealthcare expressed its decision to uphold its denial of coverage following review of the appeal by a UnitedHealthcare medical director, board certified in medical oncology, who determined that based on policy no. T0132, "the requested service has not been shown to be safe and effective for [Ms. Weissman's] condition." Coverage was denied pursuant to the "experimental or investigational or unproven" exclusion. However, UnitedHealthcare stated that it was sending Ms. Weissman's case to an outside specialist in radiation oncology in order to get an expert opinion. UnitedHealthcare was certain to remind Ms. Weissman in its letter that she would be "responsible for all costs related to [the PBT]" pending the review.

27.	In a letter dated April 13, 2016, UnitedHealthcare sent a "corrected" decision on the appeal and stated: "We are pleased to inform you that we will process the claim(s) relevant to this service(s) accordingly." But on page two of the letter, UnitedHealthcare clarified that it would

11

only process the claim for IMRT; that it was not reversing its denial of PBT. In the letter, UnitedHealthcare stated that it had requested "a Board-certified independent doctor" who "specializes in radiation oncology" to review Ms. Weissman's case and determined that "there is not enough evidence . . . to show [PBT] is effective for [her] condition." UnitedHealthcare determined that PBT was "considered unproven under the terms of [the Plan]."

28. Ms. Weissman and her health care providers were determined and again appealed UnitedHealthcare's denial.

29. In a letter dated April 22, 2016, UnitedHealthcare expressed its decision to uphold the denial and explained that the second appeal was reviewed by a medical director, specializing in obstetrics and gynecology, who concluded: "You have cervical cancer. … We have reviewed your health plan benefits regarding the use of [PBT]. Based on the review, there is not enough medical evidence to show [PBT] is effective for your condition."

30. Ms. Weissman was in a fight for her life, and neither she nor her health care providers were willing to surrender to UnitedHealthcare's unreasonable denial of coverage. In a letter dated April 27, 2016, Dr. Russo expressed her opinions as to the medical necessity for PBT in Ms. Weissman's case. She explained that Ms. Weissman's case had been presented to the PBT rounds at MGH, which functions as a board to allocate treatment slots for patients, given the demand for PBT that greatly exceeds the available supply. Patients are selected for treatment based on the curative potential of the therapy and benefits of that therapy over other options. The MGH PBT rounds authorized PBT for Ms. Weissman at the next available treatment slot.

31. Dr. Russo pleaded with UnitedHealthcare, explaining that Ms. Weissman was "a 30 year old woman with a curable tumor and a long life ahead of her. Proton therapy is not considered to be experimental, investigational or unproven, given there is published data showing

significant dose reductions to nearby organs at risk.  There is no reason to put [Ms. Weissman] at additional risk of toxicity when we have a less toxic modality available." Dr. Russo was joined as a signatory on the April 27, 2016, letter by five other board-certified gynecological oncologists or radiation oncologists from MGH and DFCI.  Five of the physicians are professors at Harvard Medical School, and the other was once named among America's Top Doctors by Newsweek magazine.

32.     UnitedHealthcare referred the appeal for a purported external independent review, which was handled by AllMed Health Care Management.  In an unsigned letter dated May 5, 2016, AllMed expressed the independent reviewer's opinion that PBT in Ms. Weissman's case was excluded under the Plan as experimental or investigational because "there is not enough strong clinical evidence to suggest [PBT] would change the outcome in this case."  The identity of the independent reviewer was not revealed.

33.     UnitedHealthcare refused to budge despite pleas on Ms. Weissman's behalf by United States Senators Elizabeth Warren and Edward Markey, and Congressman Michael Capuano.

34.     UnitedHealthcare chose to rely on policy no. T0132 and the opinions of its medical directors, despite their lack of requisite qualifications and expertise in medical and radiation gynecology oncology, instead of the opinions of Ms. Weissman's esteemed and properly board-certified health care providers.

35.     Ms. Weissman was forced to incur a $95,000.00 expense for PBT treatment, without any assistance from UnitedHealthcare.

36.     After 55 rounds of radiation, 17 rounds of chemotherapy, a surgical procedure to remove her para-aortic lymph nodes, and the PBT UnitedHealthcare refused to cover, Ms.

Weissman has been cancer free for two years, a critical mile post in her recovery since the risk of recurrence drops considerably after two years.

37. The PBT was a tremendous success and Ms. Weissman, at 33 years old, did not suffer any of the devastating damage to healthy tissue and organs she would have sustained if forced to proceed with the IMRT, the only radiation treatment UnitedHealthcare would cover.

38. Ms. Weissman, successful in her fight for life, now pursues this fight for change, individually and on behalf of the Class Members, particularly those less fortunate and unable to bear the economic expense of PBT treatment, so that UnitedHealthcare's insured members suffering with cancer will not have to suffer the extreme and outrageous anxiety and distress of wrongful coverage denials by UnitedHealthcare, in addition to the crippling cost of care, at a time when they should be focused on their recovery, not fighting with UnitedHealthcare.

## CLASS ACTION ALLEGATIONS

39. Ms. Weissman brings this action individually and all others similarly situated as a Class Action pursuant to Federal Rules of Civil Procedure Rule 23.

40. Pursuant to Rule 23(b)(1) and (b)(2), Plaintiff seeks certification of a class defined as follows:

All persons covered under ERISA-governed plans, administered or insured by UnitedHealthcare, whose requests for PBT were denied at any time within the applicable statute of limitations, or whose requests for PBT will be denied in the future, based upon a determination by UnitedHealthcare that PBT is not medically necessary or is experimental, investigational or unproven.

41. Ms. Weissman and the Class Members reserve the right under Federal Rules of Civil Procedure Rule 23(c)(l)(C) to amend or modify the class to include greater specificity, by

further division into subclasses, or by limitation to particular issues.

42. This action has been brought and may be properly maintained as a Class Action under the provisions of Federal Rules of Civil Procedure Rule 23 because there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

**Numerosity**

43. The potential members of the proposed class as defined are so numerous that joinder of all the members of the proposed class is impracticable.

44. While the precise number of proposed class members has not been determined at this time, Ms. Weissman is informed and believes that there are a substantial number of individuals covered under plans insured or administered by UnitedHealthcare who have been similarly affected.

**Commonality**

45. Common questions of law and fact exist as to all members of the proposed class.

**Typicality**

46. Ms. Weissman's claims are typical of the claims of the proposed class. Ms. Weissman and all members of the class are similarly affected by UnitedHealthcare's wrongful conduct.

**Adequacy of Representation**

47. Ms. Weissman will fairly and adequately represent and protect the interests of the members of the proposed class. Counsel who represent Ms. Weissman are competent and experienced in litigating large and complex class actions.

**Superiority of Class Action**

48. A class action is superior to all other available means for the fair and efficient

adjudication of this controversy. Individual joinder of all members of the proposed class is not practicable, and common questions of law and fact exist as to all class members.

49.  Class action treatment will allow those similarly situated persons to litigate their claims in the manner that is most efficient and economical for the parties and the judicial system. Ms. Weissman is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

**Rule 23(b) Requirements**

50.  Inconsistent or varying adjudications with respect to individual members of the class would establish incompatible standards of conduct for UnitedHealthcare.

51.  Adjudications with respect to individual class members would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests.

52.  UnitedHealthcare has acted or refused to act on grounds generally applicable to the class, thereby making appropriate final injunctive relief or corresponding declaratory relief with respect to the class as a whole.

**FIRST CLAIM FOR RELIEF**
**For Declaratory Relief, Injunctive**
**and Other Equitable Relief, and Attorneys' Fees**
**(29 U.S.C. §§ 1132(a)(3), (g))**

53.  Ms. Weissman and the Class Members incorporate by reference the foregoing paragraphs as though fully set forth herein.

54.  As set forth herein, Ms. Weissman and the Class Members are participants in or beneficiaries of health benefit plans administered and/or underwritten by UnitedHealthcare and governed by ERISA.

55.  UnitedHealthcare acts as an ERISA fiduciary with respect to the administration and

claims decisions of the group health benefit plan it issues to employers, such as the Plan and the Class Plans, within the meaning of 29 U.S.C. § 1109(a) and 1002(21)(A). With respect to these plans, UnitedHealthcare exercises discretionary authority or control respecting management of the plans, and exercises authority or control respecting management or disposition of the plans' assets. UnitedHealthcare has the authority, and actually exercises the authority, to fund plans or administer self-funded plans (like the Plan), make decisions on claims for benefits and appeals thereof, and to write checks for benefits.

56. As an ERISA fiduciary, UnitedHealthcare must act with the utmost prudence and loyalty in communicating to plan participants and beneficiaries and in administering their claims under the plan, and must otherwise comply with the requirements of ERISA, and with terms and conditions of its ERISA plans themselves, in making benefit determinations and processing claims on behalf of plan participants and beneficiaries.

57. UnitedHealthcare repeatedly violated these obligations and duties to Ms. Weissman and the Class Members during the class period in part by the following conduct:

    a. Drafting and implementing medical policy no. T0132 for PBT that relies upon outdated medical evidence, ignores contemporary medical evidence, and relies more heavily on actuarial calculation of risk pools;

    b. Drafting and implementing policies and procedures for prior authorization review and the adjudication of insured members' claims that provide for an inadequate review of clinical records by its medical directors prior to rendering a determination of coverage;

    c. Having policy no. T0132 reviewed and applied to insured members' requests for prior authorization and in the adjudication of insured members' claims by medical directors who are unqualified to render determinations of coverage for PBT, including medical

directors who are not board certified in the requisite specialty.

58. UnitedHealthcare has categorically and improperly denied Ms. Weissman and the Class Members' requests for PBT, as alleged above.

59. In acting and failing to act as described above, UnitedHealthcare has breached its fiduciary duties.

60. Pursuant to 29 U.S.C. § 1132(a)(3), Plaintiff and the Class seek equitable and remedial relief as follows:

  a. An injunction compelling UnitedHealthcare to:

    i. Retract its categorical denials for PBT;

    ii. Provide notice of said determination in the form and manner required by ERISA to all Class Members who have had prior authorization requests or claims for PBT denied; and

    iii. Re-evaluate all prior authorization requests or claims for PBT by Ms. Weissman and the Class Members under an ERISA-compliant procedure and, where warranted, reimburse Ms. Weissman and the Class Members for amounts incurred for PBT as a result of coverage denials in violation of ERISA;

  b. An accounting of any profits made by UnitedHealthcare from the monies representing the improperly denied claims and disgorgement of any profits UnitedHealthcare may have realized by virtue of its violations of ERISA and other fiduciary breaches;

  c. Such other equitable and remedial relief as the Court may deem appropriate; and

  d. Attorneys' fees and costs in an amount to be proven, which Ms. Weissman and the Class Members are entitled to have paid by UnitedHealthcare pursuant to 29 U.S.C. §

1132(g)(1).

## REQUEST FOR RELIEF

WHEREFORE, Ms. Weissman individually and on behalf of the Class Members requests relief as follows:

61. An Order certifying the proposed Class, appointing Ms. Weissman to represent the proposed Class, and designating Ms. Weissman's counsel as Class Counsel;

62. An Order declaring that UnitedHealthcare's practices described herein violate ERISA and its ERISA-based fiduciary duties;

63. Injunctive relief as described and requested above;

64. An accounting of any profits made by UnitedHealthcare from the monies representing the improperly denied claims and an Order requiring UnitedHealthcare to disgorge any profits it made by virtue of its misconduct, as described herein;

65. An Order awarding disbursements and expenses for this action, including reasonable attorneys' fees and costs, in amounts to be determined by the Court, pursuant to 29 U.S.C. §1132(g);

66. Payment of pre-judgment and post-judgment interest as allowed under ERISA; and

67. For such other and further relief as this Court may deem just and proper.

Dated:  March 26, 2019          **ROSENFELD & RAFIK, P.C.**

By:  /s/ Mala M. Rafik
    Mala M. Rafik
    Attorneys for Plaintiff KATE WEISSMAN

ROSENFELD & RAFIK, P.C.
Mala M. Rafik
mmr@rosenfeld.com
184 High Street, Suite 503
Boston, MA  02110
Telephone:    (617) 723-7470
Facsimile:    (617) 227-2843

CALLAHAN & BLAINE, APLC
Richard T. Collins (Bar No. 166577)
*Pro Hac Vice* Pending
rcollins@callahan-law.com
Damon D. Eisenbrey (Bar No. 215927)
*Pro Hac Vice* Pending
deisenbrey@callahan-law.com
3 Hutton Centre Drive, Ninth Floor
Santa Ana, California 92707
Telephone:    (714) 241-4444
Facsimile:    (714) 241-4445

KANTOR & KANTOR, LLP
Lisa S. Kantor (Bar No. 110678)
*Pro Hac Vice* Pending
lkantor@kantorlaw.net
19839 Nordhoff Street
Northridge, CA 91324
Telephone:    (818) 886-2525
Facsimile:    (818) 350-6272