**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KATE WEISSMAN, <br><br>　　　　　Plaintiffs, <br><br>　v. <br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICE, LLC, AND INTERPUBLIC GROUP OF COMPANIES, INC. CHOICE PLUS PLAN, <br><br>　　　　　Defendants. | **NO.　1:19-cv-10580-ADB** |

**PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6)**

Plaintiff Kate Weissman respectfully submits the following Opposition to Defendants

United Healthcare Insurance Company and United Healthcare Service, LLC

("UnitedHealthcare"), and Defendant Interpublic Group of Companies, Inc. Choice Plus Plan's

("IPG Plan") Motion to Dismiss pursuant to *Federal Rule of Civil Procedure 12(b)(6)*.

1

# TABLE OF CONTENTS

**Page**

PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS
PURSUANT TO FED. R. CIV. P. 12(b)(6) ...........................................................................1

SUMMARY OF ARGUMENT .........................................................................................2

ARGUMENT ....................................................................................................................4

I.    UNITEDHEALTHCARE'S RIGGED UTILIZATION REVIEW PROCESS IS A
      BREACH OF ITS FIDUCIARY DUTY. ...............................................................5

II.   UNITEDHEALTHCARE'S BREACH OF FIDUCIARY DUTY IS EVIDENT IN
      THE ARBITRARY AND CAPRICIOUS APPLICATION OF THE PBRT
      POLICY. ...............................................................................................................8

III.  MS. WEISSMAN HAS ADEQUATELY ALLEGED THE INADEQUACIES OF
      UNITEDHEALTHCARE'S MEDICAL DIRECTORS. ........................................9

IV.   IT IS PREMATURE AT THE PLEADING STAGE TO DETERMINE
      WHETHER EQUITABLE RELIEF UNDER 29 U.S.C. § 1132 IS
      APPROPRIATE.....................................................................................................10

V.    THE PLAN IS A PROPER PARTY DEFENDANT UNDER ERISA. ...............15

VI.   REQUEST FOR ORAL ARGUMENT. ...............................................................16

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*A.D. v. T-Mobile USA, Inc.*,
2:15-CV-00180-RAJ, 2016 WL 3882919 (W.D. Wash. July 18, 2016) ..................................7

*Barnes v. Blue Cross & Blue Shield of Mich.*,
No. 03-cv-40025, 2009 WL 909551 (E.D. Mich. 2009)..........................................................15

*Brent S. v. Blue Cross Blue Shield of Massachusetts, Inc.*,
No. 17-CV-11569-ADB, 2019 WL 3253357 (D. Mass. July 19, 2019)..................................12

*Churchill v. Cigna Corp.*,
CIV.A. 10-6911, 2011 WL 3563489 (E.D. Pa. Aug. 12, 2011) ...............................................7

*CIGNA Corp. v. Amara*,
563 U.S. 421 (2011)................................................................................................................13

*Cotten v. Blue Cross & Blue Shield of Massachusetts HMO Blue, Inc.*,
No. CV 16-12176-RGS, 2018 WL 6416813 (D. Mass. Dec. 6, 2018) ...................................12

*Des Roches v. California Physicians' Serv.*,
320 F.R.D. 486 (N.D. Cal. June 15, 2017) ...............................................................................6

*Devlin v. Empire Blue Cross & Blue Shield*,
274 F.3d 76 (2d Cir. 2001)......................................................................................................11

*Englert v. Prudential Ins. Co.*,
2016 WL 2770526 (N.D. Cal. 2016) .......................................................................................15

*Escalante v. California Physicians' Serv.*,
309 F.R.D. 612 (C.D. Cal. 2015) ..............................................................................................7

*Gomez-Gonzalez v. Rural Opportunities, Inc.*,
626 F.3d 654 (1st Cir. 2010).....................................................................................................16

*Hill v. UnitedHealthcare Ins. Co.*,
No. SACV150526DOCRNBX, 2016 WL 11523589 (C.D. Cal. Mar. 14, 2016)....................15

*Johns v. Blue Cross Blue Shield of Michigan*,
No. 08-CV-12272, 2009 WL 646636 (E.D. Mich. Mar. 10, 2009) ......................................7, 8

*Korotynska v. Metro. Life Ins. Co.*,
474 F.3d 101 (4th Cir. 2016). Docket No. 23 .........................................................................13

ii

# TABLE OF AUTHORITIES CONT.

**Page(s)**

*LaRocca v. Borden, Inc.*,
   276 F.3d 22 (1st Cir. 2002)......................................................................10, 11, 12

*Larson v. United Healthcare Ins. Co.*,
   723 F.3d 905 (7th Cir. 2013) ...................................................................................7

*Mac v. Blue Cross Blue Shield of Michigan*,
   No. 16-CV-13532, 2017 WL 2450290 (E.D. Mich. June 6, 2017) ...........................6

*Meidl v. Aetna, Inc.*,
   No. 15-CV-1319 (JCH), 2017 WL 1831916 (D. Conn. May 4, 2017)......................6

*Moyle v. Liberty Mut. Retirement Ben. Plan*,
   823 F.3d 948 (9th Cir. 2016) .................................................................................14

*Mullin v. Scottsdale Healthcare Corp. Long Term Disability Plan*,
   2016 WL 107838 (D. Ariz. 2016)...........................................................................15

*N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*,
   798 F.3d 125 (2d Cir. 2016), *cert. denied sub nom. UnitedHealth Grp., Inc. v.
   Denbo*, 136 S. Ct. 506 (2015) ..........................................................................13, 15

*Rochow v. Life Ins. Co. of N. Am.*,
   780 F.3d 364 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 480 (2015)........................14

*Silva v. Metropolitan Life Ins. Co.*,
   762 F.3d 711 (8th Cir. 2014) .................................................................................13

*Terry v. Bayer Corp.*,
   145 F.3d 28 (1st Cir. 1998).....................................................................................16

*Trovato v. Prudential Ins. Co. of Am.*,
   No. 17-cv-11428-DJC, 2018 WL 813368 (D. Mass. Feb. 9, 2018).........................12

*Varity Corp. v. Howe*,
   516 U.S. 489 (1996)......................................................................................8, 10, 11

*Wit v. United Behavioral Health*,
   317 F.R.D. 106 (N.D. Cal. Sep. 19, 2016)................................................................7

**Statutes**

29 U.S.C. 1001(b) ..........................................................................................................11

29 U.S.C § 1132(a)(1)(B) and (a)(3) ............................................................................10

## TABLE OF AUTHORITIES CONT.

**Page(s)**

29 U.S.C. § 1132(d)(1) ........................................................................................................16

Fed. R. Civ. P. 8(a), 8(e)(2) ...............................................................................................11

Fed. R. Civ. P. 12(b)(6)........................................................................................................1

**Other Authorities**

5 C. Wright & A. Miller, *Federal Practice & Procedure*
 § § 1221, 1282, 1283 (2d ed. 1990) ..............................................................................11

2 J. Moore, *Moore's Federal Practice*
 § 8.09[2] (3d ed. 2002) ..................................................................................................11

Local Rule 7.1(d) .................................................................................................................16

## SUMMARY OF ARGUMENT

UnitedHealthcare argues that even if you assume it is guilty of the wrongful conduct alleged in Ms. Weissman's 20-page Complaint, even if you assume the truth of all the alleged facts and draw all reasonable conclusions, none of it amounts to a case against either UnitedHealthcare or the IPG Plan. That just cannot be true.

This case begins when Ms. Weissman was 30 years old and her Stage II B cervical cancer spread to her lymph nodes, located right next to the vertebrae in her lower back. She had already endured 30 rounds of traditional radiation and six rounds of chemotherapy at Dana-Farber Cancer Institute and Brigham & Women's Hospital. Her oncological team at Dana-Farber did all they could do and recognized that Ms. Weissman needed to be transferred to Massachusetts General Hospital ("MGH") for proton beam radiation therapy ("PBRT"), a treatment option that pinpoints cancerous cells while significantly reducing the potentially damaging effects of radiation to surrounding tissues and organs.

Andrea Russo, M.D., a leading radiation oncologist and assistant professor at Harvard Medical School, noted that Ms. Weissman was young and healthy, with a curable disease, who would face life-threatening complications with traditio7nal radiation, including ulceration, bleeding and severe narrowing of the bowel that could result in fatal perforation or rupture, and recommended PBRT to avoid such risks. Ms. Weissman's gynecologic oncologic surgeon at MGH, Dr. Whitfield Growdon, concurred.

While preparing for the PBRT treatment at MGH, Ms. Weissman learned that UnitedHealthcare had denied her doctors' request for authorization to proceed with the treatment. UnitedHealthcare concluded the PBRT was excluded under the Plan as "experimental, investigational or unproven" ("Experimental Exclusion"). Dr. Russo appealed the denial on Ms. Weissman's behalf, expressing the basis for her opinions that PBRT was

2

medical necessary.   She was joined by five other members of the oncological team, which included board-certified gynecological oncologists or radiation oncologists from MGH and Dana-Farber.   Five of those physicians who signed the appeal letter are professors at Harvard Medical School and the other was named among America's Top Doctors by Newsweek magazine.   Dr. Russo pleaded with UnitedHealthcare in her letter:

> [Ms. Weissman] is a 30 year old woman with a curable tumor and a long life ahead of her.   Proton therapy is not considered to be experimental, investigational or unproven. … There is no reason to put her at additional risk of toxicity when we have a less toxic modality available.

UnitedHealthcare upheld its denial of Ms. Weissman's PBRT despite multiple appeals. Not even pleas by United States Senators Elizabeth Warren and Edward Markey's offices were able to shake UnitedHealthcare from its denial.

UnitedHealthcare's denial based upon the Experimental Exclusion was pre-determined by its medical policy no. T0132 for proton beam radiation therapy ("PBRT Policy"), a document found nowhere in the 146-page "summary" plan document UnitedHealthcare mails to its millions of insureds and that is applied to deny coverage by UnitedHealthcare's medical directors, who are not qualified to render opinions regarding the appropriateness of PBRT.   In Ms. Weissman's case, one of UnitedHealthcare's medical directors who twice reviewed her appeals was a doctor who, although licensed and board certified as an obstetrician/gynecologist, is not board certified in gynecologic oncology or radiation oncology.   These unqualified medical directors, armed with UnitedHealthcare's PBRT Policy, are denying medically necessary PBRT for cancer patients like Ms. Weissman on the grounds that its experimental, investigational or unproven, even though PBRT was FDA approved in 1988 and notwithstanding the fact that UnitedHealthcare covers the same PBRT for its insureds younger than 19 years old and older than 65 years old.

Ms. Weissman's parents drained their retirement account so that she could receive the treatment her doctors believed was medically necessary for her to live a long and healthy life. Ms. Weissman proceeded with the PBRT with tremendous success and remains cancer free today.

UnitedHealthcare argues that these facts do not plausibly make out a case. UnitedHealthcare argues drafting its PBRT Policy and hiring its unqualified medical directors are simply business decisions that this Court is not authorized to review.  We contend these are components of a rigged utilization review process that amounts to a fiduciary breach and results in the wrongful denial of more than two-thirds of initial authorization requests.  We believe these are more than business decisions and we believe UnitedHealthcare's insureds should expect more from their health plan.  We ask that this Court confirm their beliefs and deny UnitedHealthcare's Motion to Dismiss.

UnitedHealthcare also argues that Ms. Weissman's claims against the IPG Plan should be dismissed for failure to state any material allegations of wrongful conduct.  We will not spend much time on that argument, since inclusion of the IPG Plan was merely a byproduct of the compulsory nature of the arcane ERISA statutes and the risk of omitting an indispensable party. However, the IPG Plan is viewed as merely a nominal defendant.  Ms. Weissman reluctantly included the Plan that bears a name resemblance to her employer – IPG – who was nothing but helpful and supportive through her cancer treatment, unlike UnitedHealthcare.

## ARGUMENT

These are the arguments UnitedHealthcare makes in support of its Motion to Dismiss:

1.      To the extent Ms. Weissman asserts an ERISA breach of fiduciary claim that is not based on the denial of Plan benefits, it should be dismissed.

2.      Ms. Weissman's allegations regarding medical director qualifications do not plausibly state a claim because they are inconsistent and conclusory.

3.      Ms. Weissman's claim for equitable relief under ERISA §1132(a)(3) fails because adequate relief is available in the form of a benefits denial claim under ERISA §1132(a)(1)(B).

Here are the reasons why UnitedHealthcare's arguments fail.

## I.      UNITEDHEALTHCARE'S RIGGED UTILIZATION REVIEW PROCESS IS A BREACH OF ITS FIDUCIARY DUTY.

To succeed on its primary argument, UnitedHealthcare implores the Court to not see the forest for the tree.   UnitedHealthcare's utilization review process for healthcare provider authorization requests to proceed with PBRT and claims for reimbursement is the forest ignored by the motion despite Ms. Weissman's Complaint having thrown a bright light upon it, with detailed factual allegations and reasonably drawn conclusions.   UnitedHealthcare asks this Court to focus solely upon its drafting and implementation of the PBRT Policy and whether that amounts to a fiduciary act, while ignoring the factual allegations that the PBRT Policy is based upon outdated medical evidence and is being applied to life and death situations by medical directors who are not qualified with the requisite board certifications or equipped with adequate processes to conduct an acceptable review of clinical records, all of which results in the systematic, institution-wide denial of coverage for PBRT.

UnitedHealthcare argues that Ms. Weissman's Complaint fails to state a breach of fiduciary claim because it is premised solely upon UnitedHealthcare's drafting of the PBRT Policy, and not UnitedHealthcare's application of the Policy in making benefit determinations under the Plan terms.  A review of the Complaint demonstrates that is not true.

The Complaint alleges that the PBRT Policy was improperly developed, adopted, and then applied for the precise purpose of determining that claimants were not entitled to benefits under the

5

terms of their plan documents. The Complaint alleges that UnitedHealthcare used "policy no. T0132 reviewed and applied to insured members' requests for prior authorization." Docket No. 1, Complaint, at ¶ 9(c).  The Complaint further alleges that UnitedHealthcare uses policy no. T0132 to "categorically den[y] all prior authorization requests and claims for PBT for all types of cancers on policy no. T0132's "not indicated" list…" Docket No. 1, Complaint, at ¶ 9(d). The Complaint further alleges that UnitedHealthcare had "policy no. T0132 reviewed and *applied* to insured members' requests for prior authorization and in the adjudication of insured members' claims by medical directors who are unqualified to render determinations of coverage for PBT, including medical directors who are not board certified in the requisite specialty." Docket No. 1, Complaint, at ¶ 57(c).

But even if we were to focus just upon that one tree within the forest of facts alleged, courts have permitted similar breach of fiduciary duty claims premised upon the improper development, implementation and application of medical policies or guidelines to proceed. *Des Roches v. California Physicians' Serv.*, 320 F.R.D. 486, 512 (N.D. Cal. June 15, 2017) (certifying class claiming that Blue Shield of California breached its fiduciary duties by refusing to cover certain treatments by relying on Magellan Medical Necessity Criteria Guidelines to improperly restrict coverage for mental health illnesses more than generally accepted professional standards would permit); *Mac v. Blue Cross Blue Shield of Michigan*, No. 16-CV-13532, 2017 WL 2450290, at *6 (E.D. Mich. June 6, 2017) (denying Blue Cross Blue Shield of Michigan's motion to dismiss a challenge to its across-the-board guideline and practice of denying coverage for Human Growth Hormone for the treatment of Idiopathic Adult Human Growth Hormone Deficiency ("IAGHD"), in part, by rejecting the argument that  "in adopting these guidelines it [BCBSM] did not act as a fiduciary but rather, as a "settlor," because the guidelines are terms of the Plans themselves."); *Meidl v. Aetna, Inc.*, No. 15-CV-1319 (JCH), 2017 WL 1831916, at *13 (D. Conn. May 4, 2017) (certifying a class in connection with

claim that Aetna developed and uniformly applied a Clinical Policy Bulletin to deny coverage for transcranial magnetic stimulation based on an exclusion for experimental treatment violated their plan terms); *Wit v. United Behavioral Health*, 317 F.R.D. 106, 114–18, 141 (N.D. Cal. Sep. 19, 2016) (certifying class in connection with claim that insurer breached its fiduciary duty by developing restrictive guidelines to deny coverage of residential treatment services for substance abuse disorders); *A.D. v. T-Mobile USA, Inc.*, 2:15-CV-00180-RAJ, 2016 WL 3882919, at \*1 (W.D. Wash. July 18, 2016) (certifying class claiming that plan administrator breached its fiduciary duties by "adopt[ing] a uniform plan excluding any coverage" for certain autism treatment); *Escalante v. California Physicians' Serv.*, 309 F.R.D. 612, 616 (C.D. Cal. 2015) (certifying class in action against insurer stating claim for breach of fiduciary duty for developing and applying a medical policy to deny coverage for artificial disc replacement surgery); *see also Churchill v. Cigna Corp.*, CIV.A. 10-6911, 2011 WL 3563489, at \*4 (E.D. Pa. Aug. 12, 2011) (certifying class alleging insurer improperly used a medical coverage policy that provided a certain treatment for autism was experimental to deny coverage under its plans).UnitedHealthcare cites no cases to the contrary. In fact, the cases relied upon by UnitedHealthcare -- *Larson v. United Healthcare Ins. Co.*, 723 F.3d 905 (7th Cir. 2013) and *Johns v. Blue Cross Blue Shield of Michigan*, No. 08-CV-12272, 2009 WL 646636 (E.D. Mich. Mar. 10, 2009) -- are distinguishable and actually support the denial of their motion.

In the *Larson* case, heavily relied upon by UnitedHealthcare, the court held that the drafting and contents of a health insurance plan itself could not amount to a breach of fiduciary duty. We are not talking about the language in Ms. Weissman's health insurance plan. In fact, that is one of the big problems here. The PBRT Policy is not contained in the insured member's plan document. The first time an insured like Ms. Weissman learns of the PBRT Policy is when

7

they have been diagnosed with cancer and UnitedHealthcare waves it in their face to deny coverage for their treatment.

The court in *Larson* said a breach of fiduciary claim must concern "discretionary aspects of claims administration" such as "individual eligibility and benefits determinations."  *Id.* at p. 917.  That is the type of conduct we are taking issue with.  It is the application of the PBRT Policy to routinely deny claims and benefits.

UnitedHealthcare also finds no support in the *Johns* case, which dealt with an *unwritten* policy that was alleged to have been applied to claims for certain treatment of autism.  The Court found the plaintiff in that case failed to allege how the claims procedure itself was improper and had simply alleged the company had a policy of denying claims.  Here we allege in detail the utilization review process, which involves application of the *written* PBRT Policy, to improperly deny claims based upon incorrect and outdated medical evidence and the opinions of unqualified medical directors.

## II.   UNITEDHEALTHCARE'S BREACH OF FIDUCIARY DUTY IS EVIDENT IN THE ARBITRARY AND CAPRICIOUS APPLICATION OF THE PBRT POLICY.

UnitedHealthcare is a fiduciary under the IPG Plan to the extent it exercises discretionary authority and control with respect to the management and administration of the Plan, interpretation of Plan documents and payment of claims made under the Plan.  As a fiduciary, UnitedHealthcare has the legal obligation to act in the best interests of its insured members, like Ms. Weissman.  *Varity Corp. v. Howe*, 516 U.S. 489, 506 (1996).

UnitedHealthcare does not necessarily dispute its status as a fiduciary. Its argument focuses on whether the drafting and implementation of the PBRT Policy, standing apart from the other facts, suffice to support liability.  Although Ms. Weissman alleges much more than just the PBRT Policy, a review of that document (Exhibit 1 to defendants' motion, Docket No. 23-2),

demonstrates the intellectual dishonesty of UnitedHealthcare.

Although UnitedHealthcare relied upon the PBRT Policy to deny Ms. Weissman's treatment pursuant to the Experimental Exclusion, the PBRT Policy states:

> This policy applies to persons 19 years of age and older. **Proton beam radiation therapy is covered** without further review for persons younger than 19 years of age.

*See* Exhibit 1, page 1, boldface added**.**  Furthermore, seniors 65 years and older who purchase a UnitedHealthcare Medicare Advantage Policy would also have coverage for PBRT.

According to UnitedHealthcare's PBRT Policy, PBRT is only experimental for the insured members 19 years old to 64 years old.  This is illogical in light of the fact that PBRT was invented in 1946, was being used in the 1950's to treat certain types of cancers and was approved by the FDA in 1988 for the treatment of cancer.  UnitedHealthcare's PBRT Policy demonstrates an arbitrary and capricious application of the Experimental Exclusion, based upon a document that appears nowhere in the Plan, let alone within the Experimental Exclusion itself.

## III.  MS. WEISSMAN HAS ADEQUATELY ALLEGED THE INADEQUACIES OF UNITEDHEALTHCARE'S MEDICAL DIRECTORS.

UnitedHealthcare argues that Ms. Weissman failed plead specific factual allegations concerning the unqualified medical directors making these life and death decisions, and that the facts pled are inconsistent. First of all, Ms. Weissman's acknowledgment that some of UnitedHealthcare's medical directors were board certified in some discipline is not inconsistent with her allegations that they also were unqualified to render decisions about her care.  Just because a medical director is board certified as an obstetrician/gynecologist does not qualify that doctor to render opinions that are to be made by board certified radiation oncologists or gynecological oncologists.  Under UnitedHealthcare's argument, Ms. Weissman's trial counsel would qualify to handle the estate planning needs of UnitedHealthcare's billionaire CEO.

9

If the Court should find the allegations concerning the medical directors' lack of qualifications to be wanting, Ms. Weissman has loads of facts, names and reputations that were spared from the first draft of her Complaint.  If UnitedHealthcare insists that it cannot ascertain the basis for Ms. Weissman's allegations from the facts contained in her Complaint and from those facts readily available to UnitedHealthcare, such as facts adduced from public records that would reveal how the medical director who twice upheld the denial of Ms. Weissman's PBRT had just the year before been disciplined by the Maryland State Board of Physicians and ordered to pay a fine, Ms. Weissman would gladly oblige this Court and amend her Complaint to include much more detailed factual allegations in this regard.  Certainly these additional factual allegations can be included in the Complaint, but are unnecessary, as are additional factual allegations concerning other UnitedHealthcare medical directors with far worse violations and misconduct documented by multiple state medical boards.

**IV.     IT IS PREMATURE AT THE PLEADING STAGE TO DETERMINE WHETHER EQUITABLE RELIEF UNDER 29 U.S.C. § 1132 IS APPROPRIATE.**

UnitedHealthcare argues that Ms. Weissman is barred from bringing both 29 U.S.C § 1132(a)(1)(B) and (a)(3) claims because the (a)(3) claims would be duplicative of the claim for benefits. Docket No. 23, Motion at 12-13. As support for this position, UnitedHealthcare cites to *Varity*, 516 U.S. at 514-515, and *LaRocca v. Borden, Inc.*, 276 F.3d 22, 28 (1st Cir. 2002) for the position that at the motion-to-dismiss stage a claim for equitable relief is barred if a benefit claim under (a)(1) is pursued. It is bewildering why UnitedHealthcare places any reliance on either authority.  Neither case says anything about the ability of plaintiffs to bring both a benefit claim and a claim for breach of fiduciary duty. In fact, both cases deal factually with plaintiffs who were improperly terminated from various benefit plans.

In *Varity*, the Supreme Court held that (a)(3) gave plaintiffs a right to "appropriate equitable relief ... to redress" the harm that Varity's deception had caused them individually, and that such relief included reinstatement to the old plan.  *Id.* at 515.  The court in *LaRocca* looked

at *Varity* noting that the *Varity* plaintiffs had no remedy available to them under section (a)(1) because there were no longer member of their plan and therefore had no benefits due to them. *LaRocca*, 276 F.3d at 29. The *Varity* plaintiffs had no remedy under ERISA to redress the deception that forced them out of their plan other than section (a)(3). Based on this reading of *Varity*, the *LaRocca* court merely held that once the improperly terminated *LaRocca* plaintiffs achieved the equitable relief they sought under (a)(3), that is reinstatement under the plan, their only remaining claim was one for the benefits under (a)(1)(B). *Id.* ("Here, once the district court mandated the plaintiffs' constructive reinstatement (and opportunity for actual reinstatement) to the Plan pursuant to section (a)(3), the plaintiffs' claims were governed by the terms of the Plan, as Section (a)(1) provides.")

In fact, the import of *Varity* on the issue of bringing simultaneous claims for relief was properly contextualized by the United States Solicitor General in 2001. Empire Blue Cross Blue Shield took and the Second Circuit rejected the position that plaintiffs were precluded from making a claim for breach of fiduciary duty where other remedies may be available under ERISA. *Devlin v. Empire Blue Cross & Blue Shield*, 274 F.3d 76, 89 (2d Cir. 2001). In opposing the petition for certiorari to the Supreme Court, the Solicitor General argued that "[Empire's] contrary interpretation of *Varity* is inconsistent with ordinary principles of civil procedure, which permit the joinder of alternative--and even inconsistent--claims in a single action. Fed. R. Civ. P. 8(a), 8(e)(2); 5 C. Wright & A. Miller, *Federal Practice & Procedure* § § 1221, 1282, 1283 (2d ed. 1990); 2 J. Moore, *Moore's Federal Practice* § 8.09[2] (3d ed. 2002). It is also inconsistent with the goal of ERISA to provide "appropriate remedies, sanctions, and ready access to the Federal courts." 29 U.S.C. 1001(b). Brief for the United States as Amicus Curiae Opposing Petitioners, 2003 WL 21698901 (U.S.), 16. Neither *Varity* or *LaRocca* provide UnitedHealthcare are relevant to the issue of Ms. Weissman bringing simultaneous claims for relief under (a)(1)(B) and (a)(3).

UnitedHealthcare compounds dubious reliance on *LaRocca* with a disregard for recent case law that places *LaRocca* in proper context, including case law from this Court. As this

11

Court very clearly found in a recent decision from July 2019, the issue of whether a Court must find that a claim under § 1132(a)(3) is barred by a claim brought under § 1132(a)(1)(B) at the motion to dismiss stage *has not yet been addressed by the First Circuit*, because "*LaRocca v. Borden, Inc.*, 276 F.3d 22 (1st Cir. 2002), is a summary judgment case." *Brent S. v. Blue Cross Blue Shield of Massachusetts, Inc.*, No. 17-CV-11569-ADB, 2019 WL 3253357, at *3 (D. Mass. July 19, 2019) (citing *Trovato v. Prudential Ins. Co. of Am.*, No. 17-cv-11428-DJC, 2018 WL 813368, at *3 (D. Mass. Feb. 9, 2018)) (emphasis added).

UnitedHealthcare ignores this Court's recent holding in *Brent S.*  In *Brent S.*, this Court carefully reviewed prior holdings addressing the issue of bringing simultaneous claims for relief at the motion to dismiss stage.  The Court specifically looked back to "[t]wo courts in this district that have faced the issue head-on [and] have come out in different ways." *Brent S.*, 2019 WL 3253357 at *3.  The Court first examined *Cotten v. Blue Cross & Blue Shield of Massachusetts HMO Blue, Inc.*, No. CV 16-12176-RGS, 2018 WL 6416813, at *3 (D. Mass. Dec. 6, 2018), where Judge Stearns concluded much like in *LaRocca* that plaintiffs could not plead their § 1132(a)(3) claim in the alternative at the motion to dismiss stage.  Judge Stearns stated that he was "reasonably confident that [the First Circuit] would adhere to its prior position" set forth in *LaRocca*.  *Id.*

However, this Court also examined Judge Casper's holding in *Trovato v. Prudential Insurance Co. of America*, No. 17-cv-11428-DJC, 2018 WL 813368 (D. Mass. Feb. 9, 2018), wherein Judge Casper acknowledged the First Circuit's decision in *LaRocca*, but determined that *LaRocca* was not dispositive at the motion to dismiss stage.  *See id.* at *3.  This Court specifically noted that Judge Casper "reviewed the case law from the Second, Eighth, and Ninth Circuits that held that deciding this issue at the motion to dismiss stage was premature and adopted their approach." *Brent S.*, 2019 WL 3253357, at *3.  This Court concluded that "*Trovato* [is] both practical and equitable and will adopt the same analysis." *Id.*  The Court also noted that *Trovato* was not at odds with *LaRocca*, because *La Rocca* concerned a case at the summary judgment stage. *Id.*

12

Given the Court's very clear view on the bringing of simultaneous claims for relief under ERISA at the motion to dismiss stage, it is no wonder that UnitedHealthcare spends an additional two pages citing to case law outside of the First Circuit.  Where no case law exists in the First Circuit by which UnitedHealthcare can hang its hat on this issue, it directs the Court to look at pre-*Amara* Fourth Circuit case law in *Korotynska v. Metro. Life Ins. Co.*, 474 F.3d 101 (4th Cir. 2016).  Docket No. 23, Motion, at 13-14.  UnitedHealthcare cites *Korotynska* to draw analogy to the purposes of Ms. Weissman's fiduciary duty challenge as simply an "impermissible re-packaging of an § 1132(a)(1)(B) claim." Docket No. 23, Motion, at 13.  UnitedHealthcare also very clearly ignores the US Supreme Court's analysis of appropriate equitable remedies under § 1132(a)(3) in *CIGNA Corp. v. Amara*, 563 U.S. 421, 441 (2011), wherein the Supreme Court defined § 502(a)(3)'s phrase "appropriate equitable relief" as extending to the provision of "monetary 'compensation' for a loss resulting from a trustee's breach of duty, or to prevent the trustee's unjust enrichment."  It is instructive that UnitedHealthcare relies on authorities pre-*Amara*.

Post-*Amara* ERISA case law overwhelmingly supports that the motion to dismiss stage is an in an appropriate time for courts to determine if a plaintiff's equitable relief claims are duplicative to its (a)(1)(B) claims.  *See, e.g. Silva v. Metropolitan Life Ins. Co.*, 762 F.3d 711, 726 (8th Cir. 2014) (noting that "[a]t the motion to dismiss stage ... it is difficult for a court to discern the intricacies of the plaintiff's claims to determine if the claims are indeed duplicative, rather than alternative, and determine if one or both could provide adequate relief," and therefore a "district court should generally not dismiss a § 1132(a)(3) claim as duplicative of a claim for benefits at the motion to dismiss stage of a case.") (internal quotation marks and citation omitted); *see also N.Y. State Psychiatric Ass'n, Inc. v. UnitedHealth Grp.*, 798 F.3d 125, 134 (2d Cir. 2016), *cert. denied sub nom. UnitedHealth Grp., Inc. v. Denbo*, 136 S. Ct. 506 (2015) (holding dismissal of a Section 502(a)(3) ERISA claim is premature where the plaintiff "has not yet succeeded on his § 502(a)(1)(B) claim, and it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide him a sufficient

13

remedy*"); Moyle v. Liberty Mut. Retirement Ben. Plan,* 823 F.3d 948 (9th Cir. 2016) (adopting the reasoning of *Silva v. Metropolitan Life Ins. Co*); *compare Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 372 (6th Cir. 2015), *cert. denied*, 136 S. Ct. 480 (2015) (holding alternative pleading allowed when based on an injury separate and distinct from the benefit claim).

Notwithstanding the prematurity of UnitedHealthcare's arguments regarding any purported overlap between plaintiff's (a)(1)(B) and (a)(3) claims, UnitedHealthcare attempts to inaccurately frame Ms. Weissman's breach of fiduciary duty claim as a claim that can be adequately remedied under § 1132(a)(1)(B).    UnitedHealthcare attempts to do this by misinterpreting the allegations in the Complaint.    Moreover, the equitable remedies sought in *Korotnyska* are easily distinguishable from the remedies sought by Ms. Weissman.

In *Korotynska*, the plaintiffs sought reform (under § 1132(a)(3)) of "the systemic improper and illegal claims handling practices that [MetLife] uses to deny her and other ERISA beneficiaries a full and fair review of their claims for disability benefits and a full and fair review of claims (including Ms. Korotynska's) that have been denied or terminated," as well as other appropriate equitable relief.  *Korotynska*, 474 F.3d at 104.  Ms. Weissman, on the other hand, not knowing whether Plaintiffs will achieve full or adequate relief under § 1132 (a)(1)(B), seeks broad-based injunctive relief requiring UnitedHealthcare to cease its unlawful practices and to re-evaluate denied claims on a class wide basis, relief under this alternative section of ERISA that may prove all the more appropriate.

Ms. Weissman seeks very specific remedies from UHC:  (1) retract its categorical denials for PBT; (2) provide notice of said determination in the form and manner required by ERISA to all Class Members who have had prior authorization requests or claims for PBT denied;  (3) re-evaluate all prior authorization requests or claims for PBT by Ms. Weissman and the Class Members under an ERISA-compliant procedure and, where warranted, reimburse Ms. Weissman and the Class Members for amounts incurred for PBT as a result of coverage denials in violation of ERISA;  and (4) account for any profits made by UnitedHealthcare from the monies representing the improperly denied claims and disgorgement of any profits UnitedHealthcare

14

may have realized by virtue of its violations of ERISA and other fiduciary breaches.  Complaint, at ¶60(a)-(b).  Ms. Weissman seeks distinct remedies and those that will be especially important to putative class members who were unable to obtain authorization or reimbursement for PBT, including a disgorgement of profits retained by UnitedHealthcare as a consequence of its breach of fiduciary duties.  *See Englert v. Prudential Ins. Co.,* 2016 WL 2770526 (N.D. Cal. 2016) (denying defendant's motion to dismiss plaintiff's request for disgorgement of profits, surcharge and other make-whole relief under 29 U.S.C. § 1132(a)(3), finding that this request was not duplicative of his 29 U.S.C. § 1132(a)(1)(B) claim); *Mullin v. Scottsdale Healthcare Corp. Long Term Disability Plan,* 2016 WL 107838 (D. Ariz. 2016) (denying defendant's motion to dismiss plaintiff's request for surcharge under 29 U.S.C. § 1132(a)(3), finding that this request was not duplicative of his 29 U.S.C. § 1132(a)(1)(B) claim); *Hill v. UnitedHealthcare Ins. Co.*, No. SACV150526DOCRNBX, 2016 WL 11523589, at *7 (C.D. Cal. Mar. 14, 2016) (*citing Ehrman v. Standard Ins. Co.*, No. C06-05454 MJJ, 2007 WL 1288465, at *4 (N.D. Cal. May 2, 2007) for the proposition that "it is not clear to this Court that § 1132(a)(1)(B) was intended by Congress to provide the sole form of relief for the systematic wrongful acts that Plaintiff alleges.").

Under post-*Amara* case law*,* Ms. Weissman's requests for equitable relief under 29 U.S.C. § 1132(a)(3) are proper. Moreover, UnitedHealthcare's reliance on the pre-*Amara* holding in *Barnes v. Blue Cross & Blue Shield of Mich.*, No. 03-cv-40025, 2009 WL 909551, at *12 (E.D. Mich. 2009) is inapposite.  At the very least, it would be premature for the Court to grant UnitedHealthcare's Motion to Dismiss as to Ms. Weissman's First Claim for Relief at this time because "it is not clear at the motion-to-dismiss stage of the litigation that monetary benefits under § 502(a)(1)(B) alone will provide [Plaintiffs] a sufficient remedy." *N.Y. State Psychiatric Ass'n, Inc.*, 798 F.3d at 134.

**V.    THE PLAN IS A PROPER PARTY DEFENDANT UNDER ERISA.**

UnitedHealthcare, again without any relevant case citation, argues this Court should dismiss Plaintiff's 1132(a)(3) breach of fiduciary duty claim against the IPG Plan for failing to allege "almost no facts relating to the IPG Plan . . ." Docket No. 23, Motion at p. 20. Under

ERISA, "[a]n employee benefit plan may sue or be sued ... as an entity." 29 U.S.C. § 1132(d)(1). Generally speaking, ERISA claims ordinarily should be brought against the plan, as the plan normally owes the benefits. However, the circuits are split as to the proper defendant in an ERISA action. The First Circuit has held that "the proper party defendant in an action concerning ERISA benefits is the party that controls administration of the plan." *Gomez-Gonzalez v. Rural Opportunities, Inc*., 626 F.3d 654, 665 (1st Cir. 2010). Accordingly, Ms. Weissman sued UnitedHealthcare. However, dicta in an older, and unchallenged First Circuit case does indicate that the plan itself may be named as a defendant. *See Terry v. Bayer Corp*., 145 F.3d 28, 35 (1st Cir. 1998) ("ERISA contemplates actions against an employee benefit plan and the plan's fiduciaries. With narrow exception, however, ERISA does not authorize actions against nonfiduciaries of an ERISA plan."), citing *Santana v. Deluxe Corp*., 920 F.Supp. 249, 253 (D.Mass.1996). The First Circuit has yet to determine whether the benefits plan is a proper party in an ERISA fiduciary duty claim. Given the circuit split on this issue, and the First Circuit's statement in *Terry, supra*, dismissing the Plan as a party at this juncture of the proceeding is premature.

## VI.     REQUEST FOR ORAL ARGUMENT.

Pursuant to Local Rule 7.1(d), Ms. Weissman hereby respectfully requests that the Court hear oral argument on her opposition to Defendants' motion.

Dated:  October 17, 2019                    **CALLAHAN & BLAINE, APLC**


By:     /s/ *Richard T. Collins*
        Richard T. Collins
        Attorneys for Plaintiff KATE WEISSMAN

        CALLAHAN & BLAINE, APLC
        Richard T. Collins *Pro Hac Vice*
        rcollins@callahan-law.com
        Damon D. Eisenbrey *Pro Hac Vice*
        deisenbrey@callahan-law.com
        3 Hutton Centre Drive, Ninth Floor
        Santa Ana, California 92707

16

Telephone:	(714) 241-4444
Facsimile:	(714) 241-4445


ROSENFELD & RAFIK, P.C.
Mala M. Rafik
mmr@rosenfeld.com
184 High Street, Suite 503
Boston, MA  02110
Telephone:	(617) 723-7470
Facsimile:	(617) 227-2843

KANTOR & KANTOR, LLP
Lisa S. Kantor *Pro Hac Vice*
lkantor@kantorlaw.net
19839 Nordhoff Street
Northridge, CA 91324
Telephone:	(818) 886-2525
Facsimile:	(818) 350-6272

17