UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| KATE WEISSMAN, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| UNITEDHEALTHCARE INSURANCE | * | |
| COMPANY, UNITEDHEALTHCARE | * | |
| SERVICES, LLC, and INTERPUBLIC | * | |
| GROUP OF COMPANIES, INC. CHOICE | * | |
| PLUS PLAN, | * | |
| Defendants. | * | |
| _____ | * | |
| | * | |
| RICHARD COLE, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | Civil Action Nos. 19-cv-10580-ADB |
| | * | 19-cv-12224-ADB |
| UNITEDHEALTHCARE INSURANCE | * | 19-cv-12239-ADB |
| COMPANY, | * | |
| Defendant. | * | |
| _____ | * | |
| | * | |
| ZACHARY RIZZUTO, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | |
| UNITEDHEALTHCARE INSURANCE | * | |
| COMPANY, UNITEDHEALTHCARE | * | |
| SERVICES, INC., and THE HERTZ | * | |
| CUSTOM BENEFIT PROGRAM, | * | |
| | * | |
| Defendants. | * | |
| | * | |
| | * | |

<u>**MEMORANDUM AND ORDER ON DEFENDANTS' MOTION TO DISMISS**</u>

BURROUGHS, D.J.

Plaintiffs Kate Weissman, Richard Cole, and Zachary Rizzuto (together, "Plaintiffs") bring this putative class action suit, alleging that Defendants UnitedHealthcare Insurance Company ("UnitedHealthcare Insurance"), UnitedHealthcare Services, LLC ("UnitedHealthcare Services," and, with UnitedHealthcare Insurance, "UnitedHealthcare"), Interpublic Group of Companies, Inc. Choice Plus Plan (the "Interpublic Plan"), and The Hertz Custom Benefit Program (the "Hertz Plan," with the Interpublic Plan, the "Plans," and with UnitedHealthcare and the Interpublic Plan, "Defendants") violated the Employee Retirement Income Security Act of 1974, 29 U.S.C. § 1001 *et seq.* ("ERISA"). <u>See</u> [ECF No. 41 ("Am. Compl.")].  More specifically, Plaintiffs assert that UnitedHealthcare deceptively and unfairly administered their ERISA plans by refusing to cover Proton Beam Radiation Therapy ("PBRT"), a form of radiation used to destroy cancerous tumors, because it is more expensive than more traditional cancer treatments such as Intensity Modulated Radiotherapy ("IMRT").  [<u>Id.</u> ¶¶ 1–3].  Currently before the Court is Defendants' motion to dismiss.  [ECF No. 46].  For the reasons set forth below, the motion is <u>DENIED</u>.

I.     **BACKGROUND**

A.     **Factual Background**

For purposes of the instant motion to dismiss, the Court, as it must, "accept[s] as true all well-pleaded facts alleged in the complaint and draw[s] all reasonable inferences therefrom in the pleader's favor."  <u>A.G. ex rel. Maddox v. Elsevier, Inc.</u>, 732 F.3d 77, 80 (1st Cir. 2013).

1.      The Parties

Ms. Weissman is a Massachusetts citizen who resides in Suffolk County.  [Am. Compl.

¶ 4].  Mr. Cole is a Florida citizen who lives in Miami-Dade County.  [Id. ¶ 5].  Mr. Rizzuto is a

Florida citizen who resides in Lee County.  [Id. ¶ 6].  All three are participants in group health

plans governed by ERISA and administered by UnitedHealthcare.  [Id. ¶¶ 4–6].

UnitedHealthcare is a healthcare plan provider and insurer that provides, administers, and insures

health plans.  [Id. ¶¶ 7–8].  It acts as a fiduciary with respect to its administration of ERISA

plans, and, in so doing, interprets and applies ERISA plan terms, makes coverage and benefit

decisions in its sole discretion, and provides payment to plan participants and beneficiaries

and/or their providers.  [Id. ¶ 20].  Regardless of whether a given health insurance plan is fully

insured (i.e., UnitedHealthcare pays the benefits out of its own assets) or self-funded (i.e., the

employer or plan sponsor is ultimately responsible for paying benefits), UnitedHealthcare

administers the plan and makes all benefits determinations.  [Id. ¶ 21].  The Plans are self-funded

group health plans organized and regulated under ERISA.  [Id. ¶¶ 9–10].

2.      PBRT

PBRT is a medical procedure that uses protons to deliver a curative dose of radiation to a

cancerous tumor, while reducing radiation doses to healthy tissues and organs.  [Am. Compl.

¶ 40].  It has fewer complications and side effects than IMRT because proton beams are so

targeted that patients can tolerate greater doses of radiotherapy than with the photon beams that

are used in IMRT.  [Id.].  The beam used in PBRT can be adjusted to match the size and shape of

the cancerous tissue being targeted, which limits the degree to which healthy tissue is harmed.

[Id.].  PBRT, which was invented in 1946, has been used to treat cancer since the 1950s, was

approved as a cancer treatment by the Food and Drug Administration ("FDA") in 1988, and,

today, is recognized by numerous medical organizations across the United States as a safe and effective method for treating cancer.  [Id. ¶ 41].

As set forth in its PBRT Medical Policy No. T0132 (the "PBRT Policy"), UnitedHealthcare generally takes the position that PBRT is experimental or investigational, and therefore not a covered treatment under most of the group health plans it administers.  [Am. Compl. ¶ 42].  According to Plaintiffs, the PBRT Policy ignores conclusions from the medical community regarding the efficacy of PBRT and relies on outdated and unreliable scientific studies.  [Id. ¶ 44].  On January 1, 2019, UnitedHealthcare issued a revised policy (the "New PBRT Policy") to reflect the fact that it no longer considered PBRT to be experimental insofar as it is used to treat prostate cancer.  [Id. ¶ 45].

3.     Ms. Weissman's Allegations

Ms. Weissman is a beneficiary under the Interpublic Plan, which is administered by UnitedHealthcare.  [Am. Compl. ¶ 24].  The Interpublic Plan "pays Benefits for therapeutic treatments . . ., including . . . intravenous chemotherapy or other intravenous infusion therapy and radiation oncology."  [Id. ¶ 26].  That said, the Interpublic Plan limits coverage to healthcare services that are "Medically Necessary," defined as follows:

> **Medically Necessary** - health care services provided for the purpose of preventing, evaluating, diagnosing or treating a Sickness, Injury, Mental Illness, substance-related and addictive disorders, condition, disease or its symptoms, that are all of the following as determined by the Claims Administrator or its designee, within the Claims Administrator's sole discretion.  The services must be:
> - In accordance with Generally Accepted Standards of Medical Practice.
> - Clinically appropriate, in terms of type, frequency, extent, site and duration, and considered effective for your Sickness, Injury, Mental Illness, substance-related and addictive disorders, disease or its symptoms.
> - Not mainly for your convenience or that of your doctor or other health care provider.
> - Not more costly than an alternative drug, service(s) or supply that is at least as likely to produce equivalent therapeutic or diagnostic results as

to the diagnosis or treatment of your Sickness, Injury, disease or symptoms.

[Id. ¶¶ 26–27].  Additionally, the Interpublic Plan contains a number of exclusions from

coverage, including an exclusion for experimental or investigational services (the "Experimental

Exclusion"), which are defined as follows:

> **Experimental or Investigational Services** - medical, surgical, diagnostic, psychiatric, mental health, substance-related and addictive disorders or other health care services, technologies, supplies, treatments, procedures, drug therapies, medications or devices that, at the time the Claims Administrator and the Plan Administrator make a determination regarding coverage in a particular case, are determined to be any of the following:
> - Not approved by the U.S. Food and Drug Administration (FDA) to be lawfully marketed for the proposed use and not identified in the American Hospital Formulary Service or the United States Pharmacopoeia Dispensing Information as appropriate for the proposed use.
> - Subject to review and approval by any institutional review board for the proposed use. (Devices which are FDA approved under the Humanitarian Use Device exemption are not considered to be Experimental or Investigational.)
> - The subject of an ongoing Clinical Trial that meets the definition of a Phase I, II or III Clinical Trial set forth in the FDA regulations, regardless of whether the trial is actually subject to FDA oversight.

[Id. ¶ 28].

In October 2015, Ms. Weissman was diagnosed with Stage IIB squamous cell carcinoma

of the cervix.  [Am. Compl. ¶ 61].  She completed successful traditional treatments in December

2015.  [Id.].  A few months later, however, a PET/CT scan revealed two small lymph nodes in

her para-aortic region, which were confirmed to be squamous cell carcinoma.  [Id. ¶ 62].  She

underwent laparoscopic resection of the nodes in April 2016.  [Id.].  Subsequently,

Ms. Weissman was referred to Dr. Andrea L. Russo, a professor at Harvard Medical School and

a member of Massachusetts General Hospital's Department of Radiation Oncology, for

consideration of PBRT.  [Id. ¶ 63].  Dr. Russo, along with other members of Ms. Weissman's

care team, determined that PBRT was essential for multiple medical reasons.  [Id.].  Pursuant to

the Interpublic Plan's protocols, Ms. Weissman's providers contacted UnitedHealthcare to seek prior authorization for her treatment plan, which included PBRT.  [Id. ¶ 64].  In an April 6, 2016 letter, UnitedHealthcare denied coverage based on the PBRT Policy and the Experimental Exclusion.  [Id. ¶¶ 64–65].  Ms. Weissman and Dr. Russo appealed the adverse decision, both within UnitedHealthcare and with an external review organization, but were unsuccessful in obtaining coverage for Ms. Weissman's PBRT treatment.  [Id. ¶¶ 66–76].  Despite the lack of coverage, Ms. Weissman underwent successful PBRT treatment and is now cancer-free.  [Id. ¶¶ 77–78].  Her treatment cost $95,000.  [Id. ¶ 77].

4.    Mr. Cole's Allegations

Mr. Cole is covered by a health insurance plan issued on behalf of his employer, Cole, Scott & Kissane, P.A. (the "CSK Plan") and administered by UnitedHealthcare.  [Am. Compl. ¶ 29].  Under the CSK Plan, Mr. Cole is covered for healthcare services that are "medically necessary" (i.e., "health care services provided for the purpose of preventing, evaluating, diagnosing or treating a Sickness, Injury, Mental Illness, substance-related and addictive disorders, condition, disease or its symptoms").  [Id. ¶¶ 30–31].  The CSK Plan includes the same Experimental Exclusion as Ms. Weissman's plan.  [Id. ¶ 32].

In April 2018, Mr. Cole was diagnosed with high-risk prostate cancer.  [Am. Compl. ¶ 81].  In May 2018, his radiation oncologist, Dr. Marcio Fagundes of the Miami Cancer Institute at Baptist Health South Florida, recommended that Mr. Cole undergo PBRT because, among other reasons, it would have a higher likelihood of achieving a better outcome than IMRT.  [Id.].  UnitedHealthcare denied Mr. Cole's request for pre-authorization, citing the Experimental Exclusion and the PBRT Policy.  [Id. ¶ 82].  Mr. Cole and Dr. Fagundes appealed the coverage denial, both within UnitedHealthcare's internal appeal channels and externally, but were

unsuccessful in obtaining coverage for Mr. Cole's PBRT treatment.  [Id. ¶¶ 83–94].

Nonetheless, Mr. Cole underwent PBRT treatment, with positive results.  [Id. ¶ 95].  His

out-of-pocket expenses were $85,000.  [Id.].

        5.      Mr. Rizzuto's Allegations

Mr. Rizzuto is a beneficiary under the Hertz Plan, which is administered by

UnitedHealthcare.  [Am. Compl. ¶ 33].  The Hertz Plan provides coverage that is nearly identical

to the coverage provided under Ms. Weissman's plan.  Compare [id. ¶¶ 26–28], with [id.

¶¶ 34–36].

Mr. Rizzuto was diagnosed with brain cancer in August 2017.  [Am. Compl. ¶ 98].  In

December 2017 and again in January 2018, Mr. Rizzuto underwent craniotomy procedures,

which led to adverse side effects including cognitive deficits, fatigue, and loss of peripheral

vision.  [Id. ¶¶ 100–01].  Subsequently, Mr. Rizzuto's radiation oncologist, Dr. Robert Lustig,

the Chief of Clinical Operations for Radiation Oncology and a professor of Clinical Radiation

Oncology at the University of Pennsylvania, recommended PBRT.  [Id. ¶ 101].  Mr. Rizzuto's

doctors believed that PBRT was safer than traditional radiation and would spare healthy brain

tissue.  [Id. ¶ 102].  Accordingly, Mr. Rizzuto sought prior authorization from UnitedHealthcare

for his PBRT treatment.  [Id.].  Shortly thereafter, UnitedHealthcare denied coverage based on

the PBRT Policy and the Experimental Exclusion.  [Id. ¶ 104].  Mr. Rizzuto, his wife, and his

doctors appealed the decision, both internally and externally, but could not convince

UnitedHealthcare to change its position.  [Id. ¶¶ 105–115].  Mr. and Mrs. Rizzuto raised the

$126,000 needed for Mr. Rizzuto's PBRT treatment through a Go Fund Me page.  [Id. ¶ 116].

Mr. Rizzuto's tumor is now stable.  [Id. ¶ 117].

## B.     Procedural Background

Ms. Weissman filed her original complaint in this action on March 26, 2019.  [ECF No.

1].  On March 25, 2020, the Court granted Defendants' motion to dismiss, but gave

Ms. Weissman leave to amend.  [ECF No. 36].  On April 8, 2020, the Court consolidated

Ms. Weissman's case with Mr. Cole's, which was transferred to this district from the United

States District Court for the Southern District of Florida, [ECF No. 39], and on April 13, 2020,

the Court further consolidated the cases with Mr. Rizzuto's, which was transferred to this district

from the United States District Court for the Middle District of Florida, [ECF No. 40].

On May 15, 2020, Plaintiffs filed their two-count consolidated, amended class-action

complaint.  [Am. Compl.]. Their proposed class consists of:

> All persons covered under ERISA-governed plans, administered or insured by
> UnitedHealthcare, whose requests for PBRT were denied at any time within the
> applicable statute of limitations, or whose requests for PBRT will be denied in the
> future, based upon a determination by UnitedHealthcare that PBRT is not medically
> necessary or is experimental, investigational or unproven.

[Id. ¶ 126].[1]  In Count I, asserted against UnitedHealthcare, they allege that UnitedHealthcare

breached its fiduciary duties "by adopting, implementing, and applying a policy to deny

coverage for PBRT based on the Experimental Exclusion under its Plans, when such a finding

was contrary to generally accepted practices and to the terms of the Plans."  [Id. ¶ 146]; see [id.

¶ 153].  Pursuant to 29 U.S.C. § 1132(a)(3), ERISA's "catch-all" provision, they seek an

---

[1] Excluded from the putative class are:

> (a) Defendant, including any entity or division in which Defendant has a controlling
> interest, as well as its agents, representatives, officers, directors, employees,
> trustees, and other entities related to, or affiliated with Defendant, (b) Class
> Counsel, and (c) the Judge to whom this case is assigned and any members of the
> Judge's staff or immediate family.

[Am. Compl. ¶ 127].

injunction requiring United Healthcare to: (1) "[r]etract its categorical denials of PBRT prior authorization requests and/or claims"; (2) "[p]rovide notice to all PBRT Class Members who have had prior authorization requests or claims for PBRT denied"; (3) "[r]e-evaluate all prior authorization requests or claims for PBRT by Plaintiffs and the PBRT Class Members under an ERISA-compliant procedure and, where warranted, reimburse Plaintiffs and the PBRT Class Members for amounts incurred for PBRT as a result of coverage denials in violation of ERISA"; and (4) "[a]ccount for and disgorge any profits UnitedHealthcare may have realized by virtue of its improperly denied claims and violations of ERISA." [Id. at 43].

In Count II, asserted against all defendants, Plaintiffs allege that UnitedHealthcare improperly denied their benefits. [Am. Compl. ¶¶ 154–61]. Under 29 U.S.C. § 1132(a)(1)(B), they seek: (1) an award of the amounts owed to them; or (2) the injunctive relief described above. [Id. at 43–44].[2]

On June 29, 2020, Defendants moved to dismiss. [ECF No. 46]. Plaintiffs opposed on August 10, 2020, [ECF No. 50], and Defendants replied on September 2, 2020, [ECF No. 54].

## II.   LEGAL STANDARD

In reviewing a motion to dismiss under Rule 12(b)(6), the Court must accept as true all well-pleaded facts, analyze those facts in the light most favorable to the plaintiff, and draw all reasonable factual inferences in favor of the plaintiff. See Gilbert v. City of Chicopee, 915 F.3d 74, 76, 80 (1st Cir. 2019). "[D]etailed factual allegations" are not required, but the complaint must set forth "more than labels and conclusions." Bell Atl. Corp. v. Twombly, 550 U.S. 544,

---

[2] In connection with both counts, Plaintiffs seek pre- and post-judgment interest as well as attorneys' fees. [Am. Compl. at 44].

555 (2007).  The alleged facts must be sufficient to "state a claim to relief that is plausible on its face."  Id. at 570.

"To cross the plausibility threshold a claim does not need to be probable, but it must give rise to more than a mere possibility of liability."  Grajales v. P.R. Ports Auth., 682 F.3d 40, 44–45 (1st Cir. 2012) (citing Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009)).  "A determination of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  Id. at 44 (quoting Iqbal, 556 U.S. at 679).  "[T]he complaint should be read as a whole, not parsed piece by piece to determine whether each allegation, in isolation, is plausible."  Hernandez-Cuevas v. Taylor, 723 F.3d 91, 103 (1st Cir. 2013) (quoting Ocasio-Hernández v. Fortuño-Burset, 640 F.3d 1, 14 (1st Cir. 2011)).  "The plausibility standard invites a two-step pavane."  Elsevier, 732 F.3d at 80 (citing Grajales, 682 F.3d at 45).  First, the Court "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)."  Id. (quoting Morales-Cruz v. Univ. of P.R., 676 F.3d 220, 224 (1st Cir. 2012)).  Second, the Court "must determine whether the remaining factual content allows a 'reasonable inference that the defendant is liable for the misconduct alleged.'"  Id. (quoting Morales-Cruz, 676 F.3d at 224).

## III.   DISCUSSION

### A.   Breach of Fiduciary Duty

As noted above, Plaintiffs allege that UnitedHealthcare breached its fiduciary duties by "adopting, implementing, and applying a policy to deny coverage for PBRT based on the Experimental Exclusion under its Plans, when such a finding was contrary to generally accepted practices and to the terms of the Plans" and seek relief under 29 U.S.C. § 1132(a)(3).  [Am. Compl. ¶ 146].  Defendants make two arguments as to why Plaintiffs' breach of fiduciary duty

claim should be dismissed.  For the reasons discussed below, the Court finds each unconvincing, and Defendants' motion to dismiss Plaintiffs' breach of fiduciary duty claim, [ECF No. 46], is therefore <u>DENIED</u>.

1.   <u>The Court's Prior Ruling Does Not Bar Plaintiffs' Claim</u>

Defendants argue that the Court already determined, in its March 25, 2020 Memorandum and Order granting Defendants' motion to dismiss Ms. Weissman's complaint (the "March 2020 Order"), [ECF No. 36], that Plaintiffs' breach of fiduciary duty claim fails as a matter of law, and that the claim should therefore be dismissed, [ECF No. 47 at 10–12].  Plaintiffs respond that Defendants misread the March 2020 Order and that even if their denial of benefits and breach of fiduciary duty claims are ultimately found to be duplicative, the Court should not dismiss either at the motion to dismiss stage.  [ECF No. 50 at 9–11].  In the March 2020 Order, the Court found the following:

> ERISA provides various civil enforcement mechanisms in 29 U.S.C. § 1132(a). Each subsection provides a separate cause of action, requiring different elements and providing different relief.  Section 1132(a)(1)(B) allows a participant in an ERISA-governed plan to bring a civil action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan.  Section 1132(a)(3), meanwhile, provides that a participant may bring a civil action (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or (B) to obtain other appropriate equitable relief (i) to redress such violations or (ii) to enforce any provisions of this subchapter or the terms of the plan.

> The Supreme Court has explained that § 1132(a)(1)(B) allows a plaintiff to recover benefits due under the plan, to enforce rights under the terms of the plan, and to obtain a declaratory judgment of future entitlement to benefits under the provisions of the plan contract.  The Supreme Court has also said that § 1132(a)(3) is a catch-all provision that act[s] as a safety net, offering appropriate equitable relief for injuries . . . not elsewhere adequately remed[ied] under § 1132(a).  [F]ederal courts have uniformly concluded that, if a plaintiff can pursue benefits under the plan pursuant to Section [(a)](1), there is an adequate remedy under the plan which bars a further remedy under Section [(a)](3).

11

In response, Weissman argues that it is premature to determine whether she can bring claims under both § 1132(a)(1)(B) and § 1132(a)(3). Other circuits that have considered the issue have found that a plaintiff may plead claims under both § 1132(a)(1)(B) and § 1132(a)(3) at the motion to dismiss stage, so long as the plaintiff does not actually recover under both theories. This Court recently found that it is inappropriate to dismiss a complaint that brings claims under both § 1132(a)(1)(B) and § 1132(a)(3) as duplicative because plaintiffs can bring claims under both sections even though plaintiffs cannot recover under both provisions. In this case, however, where the complaint only seeks relief under § 1132(a)(3) and makes no mention of § 1132(a)(1)(B), Weissman's argument that she may seek relief under both statutes is inapposite.

Here, Weissman seeks a disgorgement of any profits that the Defendants made by wrongfully denying coverage, and she also seeks an injunction compelling UnitedHealthcare to (1) provide coverage for proton beam therapy, (2) provide notice to plan members of that coverage, and (3) re-evaluate all prior authorization requests for coverage for proton beam therapy. Because the complaint seeks relief that is generally available under § 1132(a)(1)(B), it must be dismissed because it has inappropriately repackaged a request for relief under § 1132(a)(1)(B) as an action under § 1132(a)(3).

[ECF No. 36 at 11–13 (alterations in original) (citations and internal quotation marks omitted)].

Additionally, the Court noted that Ms. Weissman's "complaint inappropriately seeks *only* relief under 29 U.S.C. § 1132(a)(3)." [Id. at 16 (emphasis added)].

Contrary to Defendants' assertion, the problem with Ms. Weissman's initial complaint was not that her § 1132(a)(3) claim was deficient as a matter of law but rather that bringing a standalone § 1132(a)(3) claim, where § 1132(a)(1)(B) might provide an adequate remedy, is inappropriate. In other words, an ERISA plaintiff cannot eschew the statute's preferred enforcement mechanism, § 1132(a)(1)(B), for its catch-all provision, § 1132(a)(3), by electing to forgo a § 1132(a)(1)(B) claim. The amended complaint remedies that problem by asserting claims under both § 1132(a)(3) and § 1132(a)(1)(B). Although Defendants are correct that Plaintiffs will not be permitted to ultimately recover under § 1132(a)(3) if § 1132(a)(1)(B) provides an adequate remedy, for the reasons noted in the March 2020 Order, the Court need not dismiss the § 1132(a)(3) claim at this stage merely because it may turn out to be duplicative.

Accordingly, the March 2020 Order does not foreclose Plaintiffs' breach of fiduciary duty claim.[3]

        2.      <u>Plaintiffs Have Not Alleged a Breach of Fiduciary Duty Based Solely on the Adoption of the PBRT Policy</u>

Defendants next argue that Plaintiffs cannot challenge UnitedHealthcare's PBRT Policy because the establishment of a clinical coverage policy used for interpreting plan terms is not a fiduciary act under ERISA. [ECF No. 47 at 13–14; ECF No. 54 at 10–11]. Plaintiffs maintain that they are not challenging UnitedHealthcare's mere establishment of the PBRT Policy but rather its application of the policy to their claims. [ECF No. 50 at 11–14].

As the Court noted in the March 2020 Order, Defendants are correct that Plaintiffs cannot assert that UnitedHealthcare's establishment of the PBRT Policy is, itself, a breach of fiduciary duty under ERISA. <u>See</u> [ECF No. 36 at 9–11]. The Court, however, does not understand the amended complaint to be advancing a theory based only on the creation of the PBRT Policy. Plaintiffs allege that UnitedHealthcare breached its fiduciary duties by denying their requests for pre-authorization for PBRT treatment based on the PBRT Policy and the Experimental Exclusion. [Am. Compl. ¶ 146 ("UnitedHealthcare violated these duties by adopting, implementing, and *applying* a policy to deny coverage for PBRT based on the Experimental Exclusion under its Plans . . ." (emphasis added)); <u>id.</u> ¶ 124 ("By drafting, implementing, and *applying* its PBRT Policy, UnitedHealthcare sacrificed the interests of insureds like Plaintiffs

---

[3] The parties dispute the applicability of the law-of-the-case doctrine as to the March 2020 Order, noting, among other things, that Messrs. Cole and Rizzuto were not parties to the litigation when the Court made its ruling. <u>See</u> [ECF No. 47 at 11–12; ECF No. 50 at 9, 9 n.1; ECF No. 54 at 8, 8 n.1]. The Court need not decide whether any exceptions apply or whether the law-of-the-case doctrine binds non-parties whose claims have since been consolidated because the Court did not, in fact, find that Plaintiffs' § 1132(a)(3) claim was legally deficient.

. . ." (emphasis added))].  Plaintiffs do not object to the PBRT Policy's mere existence but rather to UnitedHealthcare's reliance on it in denying coverage for PBRT treatment.

### B.    Denial of Benefits

As noted above, Plaintiffs allege that UnitedHealthcare improperly denied them benefits to which they were entitled and seek an award reimbursing them for the cost of their PBRT treatment under § 1132(a)(1)(B).  [Am. Compl. ¶¶ 154–61; id. at 43–44].  Defendants make two arguments as to why Plaintiffs' denial of benefits claim should be dismissed.  For the reasons discussed below, each is unpersuasive, and Defendants' motion to dismiss Plaintiffs' denial of benefits claim, [ECF No. 46], is therefore DENIED.

####           1.    Plaintiffs Have Adequately Alleged that the Exclusions Do Not Apply

Defendants argue that Plaintiffs have failed to plausibly allege that both potentially applicable coverage exclusions are inapplicable.  [ECF No. 47 at 14–19; ECF No. 54 at 12–16].  Plaintiffs maintain that their allegations on this issue are sufficient to withstand a motion to dismiss.  [ECF No. 50 at 14–18].

As an initial matter, by focusing on exclusions, Defendants seem to concede that PBRT was "medically necessary" for each plaintiff.  See [ECF No. 47 at 14–19 (focusing exclusively on exclusions); ECF No. 54 at 12–16].  Additionally, Plaintiffs appear to accept that it is their burden to plead facts suggesting that the exclusions are inapplicable.  See [ECF No. 50 at 14–18 (focusing on sufficiency of allegations and not challenging Defendants' statement concerning burden)].  Accordingly, the question before the Court is whether Plaintiffs' denial of benefits claim is viable in light of the potentially applicable exclusions and Plaintiffs' factual allegations regarding those exclusions.

The first potentially applicable exclusion is the Experimental Exclusion, which excludes coverage if the healthcare service in question is determined to be: (1) not approved by the FDA; (2) subject to review and approval by any institutional review board; or (3) the subject of an ongoing clinical trial.  [Am. Compl. ¶¶ 28, 32, 36].  Defendants admit that Plaintiffs have adequately alleged that the FDA approved PBRT in 1988, [ECF No. 47 at 16], but argue that Plaintiffs have failed to plead facts suggesting that PBRT does not fall into the exclusion's other two categories, [id. at 16–19].

The second potentially applicable exclusion is the unproven services exclusion, which exempts from coverage "services . . . that are determined not to be effective for treatment of the medical condition and/or not to have a beneficial effect on health outcomes due to insufficient and inadequate clinical evidence from well-conducted randomized controlled trials or cohort studies in the prevailing published peer-reviewed medical literature."  [Am. Compl. ¶ 53].  Defendants assert that Plaintiffs have pointed to no specific clinical evidence from controlled trials or cohort studies in peer-reviewed medical literature evidencing that PBRT is medically effective.  [ECF No. 47 at 17–18].

Given Plaintiffs' burden at the motion to dismiss stage, see supra, Section II, their allegations are sufficient to survive a motion to dismiss.  Specifically, Plaintiffs allege that, among other things:

- Medicare and Medicaid cover PBRT, [Am. Compl. ¶ 39];
- PBRT has been used to treat cancer since the 1950s, [id. ¶ 41];
- The National Association for Proton Therapy, the Alliance for Proton Therapy Access, and other medical organizations and studies have validated the safety and effectiveness of PBRT, [id.];
- Multiple cancer facilities and providers, including Baptist Hospital's Miami Cancer Institute, the MD Anderson Cancer Center, Loma Linda University, the University of Florida, the University of Maryland, Northwestern University, the Mayo Clinic, Emory University, Case Western Reserve University, Washington University in St. Louis, the University of Washington, the New

York Proton Center, and the Texas Center for Proton Therapy regularly recommend and use PBRT, [id.];

- UnitedHealthcare covers PBRT for individuals younger than nineteen, [id. ¶ 43];
- One of UnitedHealthcare's affiliates recently pledged over $15 million to construct and operate a proton center in New York City, [id. ¶ 57];
- Ms. Weissman's medical team considered PBRT to be her best option and did not consider it to be experimental or investigational, [id. ¶¶ 63, 67, 73];
- Mr. Cole's doctor believed PBRT would be more effective than IMRT and did not consider it to be experimental, [id. ¶¶ 81, 92]; and
- Mr. Rizzuto's doctors considered PBRT to be his best option and did not consider it to be experimental, [id. ¶¶ 101–02, 105–06].

Taking these factual allegations together, see Hernandez-Cuevas, 723 F.3d at 103, drawing on its experience and common sense, see Grajales, 682 F.3d at 44, and making all reasonable factual inferences in Plaintiffs' favor, see Gilbert, 915 F.3d at 80, the Court concludes that Plaintiffs have plausibly alleged that PBRT is not subject to either of the two asserted exclusions.

As to the Experimental Exclusion, based on the factual allegations, the Court can reasonably infer that PBRT, at least insofar as it is used to treat Plaintiffs' specific conditions, was not being reviewed by an institutional review board or the subject of an ongoing clinical trial because if either were pending, Plaintiffs' doctors specifically, and the medical community more generally, would not have characterized PBRT as safe.

As to the unproven services exclusion, the Court can reasonably infer that PBRT, at least to the extent it is used to treat Plaintiffs' conditions, is effective because otherwise Plaintiffs' doctors would not have recommended it to their patients and renowned medical organizations and cancer treatment centers would not trumpet its effectiveness and recommend its use. Whether the exclusions are, in fact, applicable is a question for a later day but because Plaintiffs'

factual allegations allow a reasonable inference that the PBRT is not barred by either exception, they have put forth enough to survive a motion to dismiss.[4]  See Twombly, 550 U.S. at 570.

> 2.   Plaintiffs Have Adequately Alleged that the Denial Was Arbitrary and Capricious

Defendants argue that Plaintiffs have failed to plausibly allege that the benefit determinations at issue were arbitrary and capricious.  [ECF No. 47 at 19–22; ECF No. 54 at 16–17].  Plaintiffs maintain that their allegations are sufficient at this stage.  [ECF No. 50 at 18–20].

Plaintiffs specifically allege that UnitedHealthcare had discretion to interpret plans and make benefit determinations, see [Am. Compl. ¶¶ 22, 24, 29, 33], and seem to concede that the arbitrary and capricious standard is appropriate, see [ECF No. 50 at 18–20 (focusing on sufficiency of factual allegations and not challenging Defendants' statement of the proper standard)].  Accordingly, the question before the Court is whether Plaintiffs have plausibly alleged that UnitedHealthcare's denial of their benefits was arbitrary and capricious.

Given Plaintiffs' burden at the motion to dismiss stage, see supra, Section II, they have alleged enough to withstand a motion to dismiss.  Specifically, Plaintiffs allege the following facts, among others:

- UnitedHealthcare covers PBRT for those younger than nineteen but not those older than nineteen despite a lack of medical studies supporting such an age-based distinction, [Am. Compl. ¶ 43];

---

[4] Defendants argue that, at a minimum, the Court should "dismiss the Amended Complaint to the extent Plaintiffs assert claims for coverage of PBRT for conditions other than cervical, prostate, and brain cancer." [ECF No. 47 at 18–19].  In essence, Defendants are seeking to limit the putative class to those individuals with the particular types of cancer that Plaintiffs had.  The First Circuit has directed district courts to "exercise caution when striking class action allegations based solely on the pleadings."  Manning v. Bos. Med. Ctr. Corp., 725 F.3d 34, 59 (1st Cir. 2013).  Accordingly, Defendants' arguments are better addressed during the class certification process should Plaintiffs move for class certification in the future.  See O'Leary v. N.H. Boring, Inc., 176 F. Supp. 3d 4, 13 (D. Mass. 2016).

- The PBRT Policy is based on out-of-date scientific literature and is infrequently updated, [id. ¶ 44];
- UnitedHealthcare issued the New PBRT Policy but did not cite any significant clinical developments indicating why the policy was changed, [id. ¶ 46];
- UnitedHealthcare failed to address the information that Mr. Cole's doctor provided concerning PBRT's safety and efficacy, [id. ¶ 93];
- UnitedHealthcare's denial of Mr. Rizzuto's request for pre-authorization was ambiguous and unspecific, [id. ¶ 104];
- The medical directors who reviewed Mr. Rizzuto's appeals were specialists in family medicine and internal medicine, not oncology, [id. ¶¶ 107, 109]; and
- The individual handling Mr. Rizzuto's appeal failed to discuss the evidence and literature that Mrs. Rizzuto cited in her letter, [id. ¶ 115].

Taking these factual allegations together, see Hernandez-Cuevas, 723 F.3d at 103, drawing on its experience and common sense, see Grajales, 682 F.3d at 44, and making all reasonable factual inferences in Plaintiffs' favor, see Gilbert, 915 F.3d at 80, the Court concludes that Plaintiffs have plausibly alleged that Defendants acted arbitrarily and capriciously. Defendants emphasize that Plaintiffs themselves allege that both UnitedHealthcare's physicians and external review organizations reviewed Plaintiffs' requests, see [ECF No. 47 at 19–21], and note the fact that portions of the PBRT Policy support UnitedHealthcare's coverage determinations, see [id. at 21–22]. These allegations and facts, however, do not render Plaintiffs' claim implausible as a matter of law. Although the facts advanced by Defendants may carry the day at summary judgment, the question before the Court now is not whether UnitedHealthcare's coverage determinations were, in fact, arbitrary and capricious, but rather whether Plaintiffs have alleged facts sufficient to make out a plausible claim for relief. See Twombly, 550 U.S. at 570. They have met that burden.

## C.    Available Relief

Defendants make two additional arguments regarding the relief that Plaintiffs seek. First, they argue that the Court should dismiss Plaintiffs' request for an accounting and disgorgement of profits because Plaintiffs have failed to allege facts showing they are entitled to such relief.

[ECF No. 47 at 22–23; ECF No. 54 at 17–19].  Second, they argue that the Court should reject Plaintiffs' request for prospective injunctive relief because Plaintiffs have not alleged facts showing that they have standing to seek prospective injunctive relief.  [ECF No. 47 at 23–24; ECF No. 54 at 19–21].  Plaintiffs maintain that the Court should not limit their potential relief at this stage of the litigation and that ERISA explicitly gives plaintiffs a right to seek a court order ensuring that a policy is applied correctly prospectively.  [ECF No. 50 at 21–25].

With respect to accounting and disgorgement, as noted supra, Section III.A.1, on the record before it, the Court cannot determine whether Plaintiffs' remedy under § 1132(a)(1)(B) would be adequate and, at this point in the proceedings, the Court is not prepared to foreclose the availability of an accounting and/or disgorgement.  See N.Y. State Psychiatric Ass'n, Inc., 798 F.3d 125, 134 (2d Cir. 2015) (reversing district court's dismissal of § 1132(a)(3) claim and noting that if plaintiff prevailed on remand, the district court should then determine whether equitable relief is appropriate).  Notwithstanding Defendants' arguments to the contrary, Plaintiffs have alleged more than just that their requests for pre-authorization for PBRT were arbitrarily and capriciously denied.  Rather, they have alleged that UnitedHealthcare has developed and applied the PBRT Policy to broadly deny coverage for PBRT, even though it is safe and effective, because it is more expensive than IMRT.  [Am. Compl. ¶¶ 118–24].  If these allegations are borne out, § 1132(a)(1)(B)'s remedy of repayment of benefits may turn out to be inadequate, and it would therefore be premature to foreclose the possibility of equitable relief, including an accounting and disgorgement, at this time.  See Ehrman v. Standard Ins. Co., No. 06-cv-05454, 2007 WL 1288465, at *4–5 (N.D. Cal. May 2, 2007) (declining, at the motion to dismiss stage, to foreclose the plaintiff from obtaining equitable relief, in addition to relief under

§ 1132(a)(1)(B), where he alleged that the defendant adopted a "biased claim practice" "designed to increase [its] financial profitability").

Further, even if Plaintiffs can ultimately prove only that UnitedHealthcare breached its fiduciary duty by impermissibly denying their benefits, it is possible that relief under § 1132(a)(1)(B) would still be insufficient.  In other words, it is conceivable that even past due benefits, prejudgment interest, and attorneys' fees may not put Plaintiffs in the position they would have been in but for UnitedHealthcare's alleged misconduct.  See Mullin v. Scottsdale Healthcare Corp. Long Term Disability Plan, No. 15-cv-01547, 2016 WL 107838, at *4 (D. Ariz. Jan. 11, 2016) (noting that "retroactive reinstatement of benefits does not account for [all] financial harms," that it was "conceivable that past due benefits, prejudgment interest, and attorneys' fees w[ould] be inadequate to put [plaintiff] in the position she would have been in but for [defendant]'s alleged fiduciary misconduct," and that "at the pleading stage . . . without factual development, the [c]ourt c[ould not] determine whether [plaintiff]'s financial harm exceeds the relief available to her under § 1132(a)(1)(B)").  Accordingly, at this juncture, the Court will not foreclose the possibility of an accounting and/or disgorgement under § 1132(a)(3).

With respect to prospective injunctive relief, the Court is similarly unprepared to restrict Plaintiffs' potential relief at the motion to dismiss stage.  If Plaintiffs prevail, the parties can dispute the availability of prospective injunctive relief.  At this point, however, the Court declines to speculate as to whether a given plaintiff's cancer will recur and/or whether he or she will be a plan participant in the future.  Further, given that this is a putative class action and the proposed class includes "[a]ll persons . . . whose requests for PBRT will be denied in the future," [Am. Compl. ¶ 126], the availability of prospective injunctive relief may not depend solely on Ms. Weissman, Mr. Cole, and Mr. Rizzuto.  Finally, the recent Supreme Court case upon which

Defendants rely, <u>Thole v. U.S. Bank N.A.</u>, does not compel a different result.  That case stands

for the proposition that plaintiffs lack standing where they "have no concrete stake in t[he]

lawsuit."  140 S. Ct. 1615, 1619 (2020).  Here, Plaintiffs have a concrete stake in this lawsuit,

and if they prevail, the Court can then decide whether the prospective injunction that Plaintiffs

seek is an available and appropriate remedy to redress their injury.

## IV.    CONCLUSION

Accordingly, for the reasons set forth above, Defendants' motion to dismiss, [ECF No.

46], is <u>DENIED</u>.

**SO ORDERED.**

March 8, 2021                                                          /s/ Allison D. Burroughs
                                                                         ALLISON D. BURROUGHS
                                                                         U.S. DISTRICT JUDGE