# UNITED STATES DISTRICT COURT

## DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| KATE WEISSMAN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICE, LLC, AND INTERPUBLIC GROUP OF COMPANIES, INC. CHOICE PLUS PLAN,<br><br>Defendants. | **CIVIL ACTION NO. 1:19-cv-10580**<br><br>**Consolidated with**    **1:19-cv-12224; and**<br>**Consolidated with**    **1:19-cv-12239**<br><br>**<u>CLASS ACTION</u>** |
| RICHARD COLE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY,<br><br>Defendants. | CIVIL ACTION NO. 1:19-cv-12224 |
| ZACHARY RIZZUTO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICE, INC., and THE HERTZ CUSTOM BENEFIT PROGRAM,<br><br>Defendants. | CIVIL ACTION NO. 1:19-cv-12239 |

## <u>PLAINTIFFS' MEMORANDUM OF LAW IN SUPPORT OF THEIR UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT</u>

## I. INTRODUCTION

Plaintiffs Kate Weissman, Richard Cole, and Zachary Rizzuto, ("Plaintiffs") seek preliminary approval of a class action settlement on behalf of a class of similarly situated individuals with a certain cancer type that had a health insurance plan or policy issued and/or administered by Defendants United Healthcare Insurance Company, United Healthcare Service, Inc., Interpublic Group of Companies, Inc., Choice Plus Plan, and The Hertz Custom Benefit Program ("Defendants" and collectively with Plaintiffs, the "Parties").

After six years of litigation, including nearly two years of hard-fought settlement negotiations, the Parties have reached and memorialized an agreement that allows individuals to seek monetary payment related to the denial of insurance coverage for Proton Beam Radiation Therapy ("PBRT") for certain types of cancer, subject to the specific terms of the Settlement Agreement (attached as **Exhibit 1**). Class Members who paid for PBRT treatment and who file valid claims will be entitled to a reimbursement of up to $75,000.[1] Settlement administration costs, lead plaintiff service awards, attorneys' fees and litigation costs will be paid by Plaintiffs' counsel out of the attorneys' fees and costs awarded by the Court—separate from the benefit to the Class.

In addition to the significant monetary component of this Settlement, the agreement provides for additional relief – United Healthcare will be revising its PBRT Medical Policy to make clear that requests for PBRT coverage will be individually evaluated for coverage. (*See* L. Kantor Decl. ¶ 10, attached as **Exhibit 2**). Plaintiffs believe these changes will make it easier for patients to obtain insurance coverage for PBRT going forward.

The Settlement is the product of well-informed, arm's-length negotiations—including four

---

[1] Reimbursements to Class Members are also subject to a $6.75 million overall cap. If claims for reimbursement reach the $6.75 million cap, Class Members individual reimbursements will be reduced on a *pro rata* basis. Ex. 3 at ¶ 29.

in-person mediation sessions and further negotiations between experienced counsel facilitated by an experienced mediator—that spanned two years. It arrives at a critical juncture in the litigation, after extensive fact discovery, but before the parties face the risks of class certification and summary judgment proceedings. The Settlement presents an excellent recovery and delivers tangible and immediate benefits to the Class. The Court should grant preliminary approval.

## II.  BACKGROUND

### A.  Plaintiffs' Allegations

This case arises from Defendants' denial of coverage for PBRT treatment for certain types of cancer. According to Plaintiffs, Defendants systematically applied United Healthcare's PBRT Medical Policy to deny PBRT on the basis that it was "unproven," "experimental or investigational," or "not medically necessary." Plaintiffs alleged that, in doing so, Defendants ignored the recommendation from Class Members' oncologists and decades-old recognition by the medical community that PBRT is an established, effective, and medically appropriate treatment for cancer. Plaintiffs alleged that Defendants' conduct violated ERISA and asserted claims under 29 U.S.C. §§ 1132(a)(1)(B), (a)(3), and (g). (*See* Consolidated Am. Complaint, ECF No. 41).

Defendants deny Plaintiffs' allegations.

### B.  Procedural History

This matter was originally filed by Plaintiff Kate Weissman on March 26, 2019, in the District of Massachusetts. (ECF No. 1). Plaintiff Richard Cole filed his complaint in the Southern District of Florida on April 3, 2019, and Plaintiff Zachary Rizzuto filed his complaint in the Middle District of Florida on September 19, 2019. (*See* Class Counsel Declaration ¶ 7, attached as **Exhibit 3**). Pursuant to the first-filed rule, the *Cole* (Case No. 19-cv-12224) and *Rizzuto* (Case No. No. 19-cv-691) matters were transferred to the District of Massachusetts in October 2019, subsequently

consolidated with the *Weissman* case, and a Consolidated Complaint was filed on May 15, 2020. (ECF No. 41; Ex. 3 ¶ 8). On June 29, 2020, the Defendants moved to dismiss the Complaint (ECF Nos. 46, 47), Plaintiffs filed their response on August 10 (ECF No. 50), and Defendants filed their Reply on September 2, (ECF No. 54). The Court denied Defendants' motion to dismiss on March 8, 2021, (ECF No. 57) and on March 31, 2021, the Defendants filed their Answer. (ECF No. 63).

Thereafter, the parties engaged in extensive discovery: Plaintiffs served sixty-nine requests for production and twelve interrogatories relating to the denial of Class Members' PBRT coverage and UnitedHealthcare's PBRT Medical Policy, among other things. (Ex. 3 ¶ 10). Defendants served 25 requests for production and 13 interrogatories to the named Plaintiffs. (*Id*.). The Parties exchanged approximately 38,000 pages of documents. (*Id*.). Plaintiffs also served six subpoenas to various non-parties. (*Id*.). Plaintiffs worked with their experts to review thousands of pages of patient files and other discovery and the Parties worked through various issues with the production of medical records. (*Id*. ¶ 12). Plaintiffs also took the deposition of UnitedHealthcare's Rule 30(b)(6) corporate representative. (*Id*. ¶ 13).

On May 11, 2023, the Parties filed a joint motion to stay the deadlines to allow them to engage in a mediation session with a well-respected, experienced ERISA mediator, Ed Oster of Judicate West. (*Id*. ¶ 15). The parties held in-person mediation sessions on July 18, August 29, October 2, and December 20, 2023, in Los Angeles, California, at the Judicate West offices. (*Id*. ¶ 17). Defendants produced additional records to help inform the negotiations. (*Id*. ¶ 18). The Parties made progress at each session and continued with remote sessions and communications with the assistance of Mr. Oster. (*Id*. ¶ 17).

On August 6, 2024, after several stays of the deadlines, the Court held a status conference and indicated that it would no longer stay the litigation and that a joint scheduling order would

need to be filed. The Parties complied and the Court entered a scheduling order on September 20, 2024. The Parties then proceeded on two tracks by re-engaging in the litigation (including setting depositions and third-party discovery) while continuing their settlement negotiations. On January 21, 2025, the Parties notified the Court that they had reached an agreement in principle to resolve the matter. (ECF No. 108; Ex. 3 ¶ 20). The Parties spent the next several months negotiating the details of the Settlement and executed the Agreement on May 9, 2025. (Ex. 3 ¶ 21).

## III.    SETTLEMENT TERMS

### A.    <u>The Proposed Settlement Class</u>

The proposed Settlement Class is defined as:

Persons who, have not properly excluded themselves per the terms of the Agreement and who:

(1) at the time they were covered by an ERISA-governed plan issued or administered by Defendants; (2) were diagnosed with one of three types of cancer at issue (prostate cancer, primary central nervous system cancer, or cervical/gynecological cancer); (3) either (a) obtained PBRT treatment and submitted a post-service claim for PBRT treatment that was denied between March 26, 2016 and August 28, 2023 for clinical reasons (identified by specific codes in the data) or (b) obtained PBRT treatment after a pre-authorization denial between March 26, 2016 and August 28, 2023 for clinical reasons (identified by specific codes in the data); and (4) the PBRT treatment was not paid for by any other commercial, self-funded, or governmental benefits health payor. (Ex. 1 at ¶ u).

### B.    <u>Monetary and Other Relief Provided to the Class</u>

#### 1.    *Payment for Out-of-Pocket Medical Costs for PBRT Treatment*

Class Members will be given the opportunity to file claims for reimbursement of out-of-pocket medical costs for the payment of PBRT treatment in an amount up to $75,000. (Ex. 3 ¶ 29). The total reimbursement is subject to an aggregate cap of $6.75 million. (*Id.*). If this aggregate cap is met, then each class member who submitted an approved reimbursement claim will share in the recovery on a *pro rata* basis. (*Id.*). Class Members will not have to demonstrate medical necessity for the PBRT treatment as part of the settlement claims process, only that they incurred the out-of-

pocket medical expenses. (*Id.*). Class Members must submit evidence of their medical expenses for PBRT when filing their claim for payment. (*See* Class Notice and Claim Form attached to Ex. 1 as exhibits A and E respectively).

## 2. *Change to UnitedHealthcare's PBRT Policy*

The Settlement also provides relief in the form of revisions to UnitedHealthcare's PBRT Medical Policy that will make it easier for patients to have their requests for PBRT coverage approved. Among other things, the PBRT Medical Policy recognizes that PBRT is proven and considered clinically equivalent to traditional radiation for treating prostate cancer; allows a patient to obtain PBRT treatment when the patient provides certain documentation demonstrating that sparing of the surrounding normal tissue cannot be achieved with standard radiation therapy techniques; and no longer includes specific references to a list of thirteen diagnoses or uses for which, proton beam therapy was deemed "unproven and not medically necessary." (*See* Kantor Decl. (Ex. 2) at ¶¶ 10-13; Ex. 1 at ¶ 7.)

## C. <u>Release</u>

The Settlement requires the Class Members to agree to release the following claims:

Any and all claims, causes of action, judgments, liens, indebtedness, costs, damages, obligations, attorneys' fees, losses, claims, liabilities and demands of whatever kind or character (each "a Claim") whether representative, class, or individual in nature that are, were, or could have been asserted against any of the Released Parties by reason of or arising out of: (1) any denial by United of any request (whether pre-service or post-service) for PBRT treatment for prostate cancer, primary central nervous system cancer, or cervical/gynecological cancer, diagnosed before the date of this Agreement, on the basis that it was "unproven" and not medically necessary pursuant to the Medical Policy that concerns PBRT treatment under ERISA-governed plans, either fully insured or self-insured; and/or (2) the appropriateness of United's Updated Medical Policy, unless United makes future material changes to the provisions describing how coverage can be obtained for PBRT treatment for prostate cancer, primary central nervous system cancer, or cervical/gynecological cancer that restrict the availability of that coverage. (Ex. 1 ¶ p).

The Released Claims are limited to the denial of PBRT treatment for the cancer types at issue here and for denials that occurred between March 26, 2016, and August 28, 2023. It also

releases claims based on the revisions to UnitedHealthcare's PBRT Medical Policy, however, the release does not encompass any future revisions that United makes to that policy.

### D. Class Counsel Fees, Administration Costs, and Class Representative Awards

The parties stipulate in the Settlement that the law firms of Arnall Golden Gregory, Colson Hicks Eidson, Kantor & Kantor, and Kozyak, Tropin & Throckmorton will serve as Class Counsel. Defendants have agreed not to oppose Counsel's application for a payment of up to $2,000,000 for (i) attorney's fees and costs, (ii) settlement administration costs, and (iii) $25,000 service award for each class representative. (Ex. 1 ¶ 8). The Settlement permits Class Counsel to seek up to an additional $500,000 for fees and costs – for an overall request of up to $2,500,000. Defendants will have the right to oppose the additional $500,000 should they wish to do so. (*Id.*).

### IV. THE SETTLEMENT WARRANTS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) requires judicial approval of any settlement agreement that will bind absent Class Members. "Approval is to be given if a settlement is untainted by collusion and is fair, adequate, and reasonable." *In re Lupron Mktg. & Sales Practices Litig.,* 228 F.R.D. 75, 93 (D. Mass. 2005). Courts in the First Circuit recognize the strong presumption in favor of voluntary settlement agreements. Indeed, settlements "should be evaluated within the context of the public policy favoring settlement." *Hill v. State St. Corp.*, 2015 WL 127728, at *6 (D. Mass. Jan. 8, 2015); *see also In re Pharm. Indus. Average Wholesale Price Litig.,* 588 F.3d 24, 36 (1st Cir. 2009) (discussing policy favoring settlements in "hard-fought, complex class action[s]"). And, both the First Circuit and the Supreme Court have recognized that ERISA cases are often "enormously complicated." *Watson v. Deaconess Waltham Hosp.,* 298 F.3d 102, 109 (1st Cir. 2002); *Conkright v. Frommert*, 559 U.S. 506, 509 (2010) (noting the facts in many ERISA matters are "exceedingly complicated"). The issues in this one were as well.

Rule 23(e) sets forth standards for settlement approval. The Rule provides that at the preliminary approval stage, the court must determine whether it "will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(e)(2), in turn, specifies additional factors the court must ultimately consider at the final approval stage in determining whether a settlement is "fair, reasonable, and adequate." Those factors are:

> (A) the class representatives and class counsel have adequately represented the class;
> (B) the proposal was negotiated at arm's length;
> (C) the relief provided for the class is adequate, taking into account:
> > (i) the costs, risks, and delay of trial and appeal;
> > (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class- member claims;
> > (iii) the terms of any proposed award of attorney's fees, including timing of payment; and
> > (iv) any agreement required to be identified under Rule 23(e)(3)[2]; and
> (D) the proposal treats class members equitably relative to each other. *Id.*

"If the parties negotiated at arm's length and conducted sufficient discovery, the district court must presume the settlement is reasonable." *O'Hara v. Diageo-Guinness, USA, Inc.*, 2021 WL 11749766, at *2 (D. Mass. June 28, 2021). Here, the Settlement was negotiated over four in-person mediation sessions, overseen by Ed Oster, a well-respected ERISA mediator. (Ex. 3 ¶ 17). In addition to the four in-person meetings, the parties met numerous times over Zoom and had countless email communications negotiating the terms of the settlement. (Ex. 3 ¶¶ 17, 19). The negotiations occurred at arm's length by experienced counsel after extensive litigation and discovery, the Class was well represented by Plaintiffs and their counsel, and the relief provided is adequate and equitable to all Class Members. (Ex. 3 ¶ 23, 26); *Meaden v. HarborOne Bank*,

---

[2] The Parties do not have any oral or written agreements outside of the Settlement under Rule 23(e) or any agreement that is not part of the Settlement. The Court can, therefore, determine the fairness and adequacy of the Parties' proposal for settlement by looking solely to the Settlement

2023 WL 3529762, at *4 (D. Mass. May 18, 2023) (finding that "arm's length negotiations conducted by experienced counsel lead to a presumption of reasonableness").

A.    **Plaintiffs and Their Counsel Have Adequately Represented the Class and Should be Appointed as Class Representatives and Class Counsel Respectively.**

In determining whether a class representative has adequately represented the class, courts examine whether there are any conflicts, whether counsel has sufficient experience, and sufficient information (e.g. through discovery) to determine the adequacy of the settlement. *Glynn v. Me. Oxy-Acetylene Supply Co*., 2022 WL 4234761, at *3 (D. Me. Sept. 14, 2022) (granting preliminary approval of ERISA settlement where sufficient discovery was taken). Plaintiffs' counsel has substantial experience in complex health insurance class actions, ERISA claims, and consumer class actions generally. (Ex. 3 ¶¶ 2-5). By the first mediation session, Plaintiffs' counsel had investigated the facts and claims, survived motions to dismiss, and reviewed thousands of pages of discovery. (*Id*. ¶¶ 6, 10-14). Plaintiffs' counsel had also engaged with industry experts to better understand PBRT compared to other forms of cancer treatment; Defendants' "medical necessity" requirements; and the claims data provided by Defendants, among other things. (*Id.)*. Plaintiffs also fulfilled their duties to the Class by assisting in drafting the complaints, reviewing the pleadings, searching for and producing documents, reviewing and responding to Defendants' interrogatories, communicating regularly with Class Counsel, attending the in-person mediations and participating in settlement discussions, and reviewing the proposed Settlement. (*Id*. ¶¶ 34-35).

B.    **The Settlement is the Product of Arm's-Length Negotiations by Experienced Counsel after Extensive Litigation and Discovery.**

A proposed class action settlement enjoys a "presumption in favor of the settlement" if "sufficient discovery has been provided and the parties have bargained at arms-length." *City P'ship Co. v. At'l Acquisition Ltd. P'ship,* 100 F.3d 1041, 1043 (1st Cir. 1996). Here, the parties engaged

in four separate in-person mediations with the Ed Oster, and continued settlement negotiations over Zoom and through email communications—all with the assistance of Mr. Oster—until an agreement in principle was reached. (ECF No. 108); Ex. 3. ¶¶ 17-20. Prior to the first mediation, Plaintiffs had engaged in extensive discovery and motion practice and had been working with their experts on issues for class certification and trial. (Ex. 3 ¶¶ 10-14). Plaintiffs understood the issues, their scope, and the critical facts prior to engaging in mediation.

The presumption of reasonableness applies where the record establishes "the assistance of an experienced and neutral mediator, following a thorough investigation and mutual exchange of evidence". *Wright v. S. N.H. Univ.,* 565 F.Supp.3d 193, 206 (D.N.H. 2021); *Glynn,* 2022 WL 4234761, at *3 (use of private mediator supports finding of arms-length negotiations); This settlement was assisted throughout by Ed Oster until an agreement in principle was reached. Ex. 3 ¶¶ 15-20; *see, e.g.*, *Baker v. Saint-Gobain Performance Plastics Corp*., 2022 WL 1025185, at *3 (N.D.N.Y. Feb. 4, 2022) ("The Court finds that the Settlement was negotiated at arm's length, in good faith, and was overseen by an experienced mediator . . . which demonstrates that the negotiated resolution was procedurally fair."). "When the parties' attorneys are experienced and knowledgeable about the facts and claims, their representations to the court that the settlement provides class relief which is fair, reasonable and adequate should be given significant weight." *Rolland v. Cellucci*, 191 F.R.D. 3, 10 (D. Mass. 2000). Plaintiffs' counsel are knowledgeable and experienced in ERISA health insurance benefit actions, as well as class actions, and have concluded that the relief provided by the Settlement is fair and reasonable. (Ex. 3 ¶¶ 2-5, 27).

### C.     <u>The Settlement Provides Significant Relief to Class Members</u>.

The negotiations produced a Settlement that provides significant relief to the Class. Class Members will have the ability to submit a simple claim form and documentation showing out-of-

pocket medical expenses to receive a recovery of up to $75,000 without needing to demonstrate medical necessity for the claim. (Ex. 3 ¶ 29). While the percentages of an individual Class Member's recovery compared to their out-of-pocket costs will vary depending on the cost, location, and amount of the PBRT treatment, the recoveries available to Class members are significant and fair. (Ex. 3 ¶ 30, 33).

This is an excellent result that compares favorably with other ERISA class action settlements. *See, e.g.*, *Cunningham v. Wawa, Inc*., 2021 WL 1626482, at *6 (E.D. Pa. Apr. 21, 2021) (ERISA settlement where recovery was 18%-28% of maximum losses was in line with other cases); *Hochstadt v. Boston Scientific Corp.,* 708 F.Supp.2d 95, 109 (D. Mass 2010) (holding that 27% recovery was "plainly reasonable" in ERISA class action involving allegations of misleading disclosures). Given the notoriously complex nature of ERISA cases, courts approving ERISA settlements have described settlements of 29% to be "an exceptional result" *See, e.g.*, *Marshall v. Northrop Grumman Corp.,* 2020 WL 5668935, *2–3 (C.D. Cal. Sept. 18, 2020); *see also Hurtado v. Rainbow Disposal Co., Inc.,* 2021 WL 2327858, at *4 (C.D. Cal. May 21, 2021) (ERISA settlement between 23% and 34% of maximum losses was an "impressive result").

The monetary relief for the Class is adequate for the additional reason that it will not be reduced by attorneys' fees, costs, Plaintiff service awards, or Settlement administration costs. Defendants have agreed to pay up to $2 million for attorneys' fees, administration costs, and class representative service awards. (Ex. 3 ¶¶ 36-39). Further, Defendants have agreed that Class Counsel may apply for up to an additional $500,000 in fees and costs, which Defendants have the right to oppose. (*Id*.). Importantly, these fees and costs (whether $2 million or $2.5 million) are not coming out of the payment to Class Members. (*Id*.). A separate payment of attorneys' fees, subject to approval of Plaintiffs' forthcoming motion for attorneys' fees and costs, further substantiates the

settlement's fairness because Class Counsel's fees were not considered until after reaching agreement on the payment amounts for the Class. (Ex. 3 ¶ 38); *see e.g. Bussie v. Allamerica Fin. Corp.,* 1999 WL 342042, at *3 (D. Mass. May 19, 1999) (approving such separately paid fees). Separating attorneys' fees from the amount paid to the class "is preferable" because it "avoids potential conflicts with the class." *Hart v. BHH, LLC*, 334 F.R.D. 74, 79 (S.D.N.Y. 2020).

### 1. *The Settlement Avoids the Costs, Risks, and Delays of Continued Litigation.*

Any evaluation of the benefits of Settlement must be tempered by the recognition of the risks, costs, and delay of continued litigation. *See Hill*, 2015 WL 127728, at *10 (risk of continued litigation includes the risk that there could be no recovery at all). While Plaintiffs' counsel are confident in the strength of their case, Defendants have mounted a vigorous defense, and there are always risks and delays inherent to litigation. (Ex. 3 ¶¶ 32-33). Plaintiffs expect Defendants would vigorously oppose class certification, challenge Plaintiffs' liability and damages theories, and submit their own expert evidence. (*Id*.). The Settlement saves Plaintiffs and the Class from facing these substantial obstacles and eliminates the risk that they would recover nothing after several more years of litigation and appeals. (*Id*.). In addition, in ERISA benefits litigation, remands can be ordered as a remedy even after a victory in court, so a certified Class could have ended up back in front of Defendants for a determination on coverage. *See Hatfield v. Blue Cross & Blue Shield of Massachusetts, Inc.,* 162 F. Supp. 3d 24, 43 (D. Mass. 2016) ("Because I will order a remand to Blue Cross for further administrative review, I do not address Hatfield's substantive claims for coverage."). Facing these headwinds, the results achieved for the Class here are extraordinary. This Settlement provides immediate and substantial relief and is therefore reasonable and adequate.

### 2. *The Notice Plan and Claim Process is Streamlined and Will Be Highly Effective.*

The Class Members are presented with a streamlined claims process. First, every potential Class Member is included on the Class List and notice will be issued to them directly via First

Class U.S. Mail. (Ex. 1 at exhibits A and E). Included with the notice package is a simple claim form for the Class Member to fill out and informs the Class Members of the necessary documentation to prove their out-of-pocket expenses. (*Id*.). Class Members need only submit their proof of out-of-pocket medical expenses, along with the claim form to take part in the settlement. (*Id*.). No proof of medical necessity or meeting medical necessity criteria is required. After the deadline for submission of claims has passed, the Settlement Administrator will review the claim form and documentation to determine the claim's validity. (Ex. 3 ¶ 29). If a valid claim is submitted, the Class Member will be entitled to a reimbursement of up to $75,000.

### 3. *Counsel will Seek Service Awards and Attorneys' Fees*.

As set forth above, Defendants have agreed not to oppose Counsel's application for a payment of $2,000,000 for attorney's fees. (Ex. 3 ¶¶ 38-39). Further, Defendants agree that Class Counsel may seek an additional $500,000 for fees and costs—for an overall request of up to $2,500,000— but Defendants reserve the right to oppose the additional $500,000 should they wish to do so. (*Id*.). Class Counsel intend to request reasonable attorney's fees and reimbursement of litigations costs of up to $2,500,000. (*Id*.). Presently, litigation costs include court reporter and videographer fees, expert fees, mediation fees, ESI vendor fees, and general litigation costs.

Further, Defendants have agreed not to oppose Counsel's application for a payment of $25,000 as a service award for each class representative. (*Id*. ¶ 37). Class Counsel intend to seek such service awards totaling no more than $25,000 per Plaintiff to be paid out of the fees paid to Counsel. (*Id*.). Counsel believes this is a modest payment for the risk and services undertaken by each Plaintiff, as well as the benefit conferred on the Class due to Plaintiffs' efforts. (*Id*.). Each Plaintiff put their name and reputation on the line for the sake of the Class and bravely came forward and made their cancer diagnosis and cancer treatment journey public. (*Id*. ¶ 35).   The

recovery would not have been possible without their efforts. (*Id.*). However, no Plaintiff was promised, nor conditioned their representation on the expectation of, a service award. (*Id.* ¶ 37).

Finally, as discussed above, the benefits made available to the Class will not be reduced by attorneys' fees, costs, Plaintiff service awards, or Settlement administration costs. Further, the parties did not negotiate Class Counsel's attorneys' fees or Plaintiffs' service awards before reaching an agreement on the terms of relief for the Class. (*Id.* ¶¶ 36-39).

### D. <u>The Settlement Treats Class Members Equitably Relative to Each Other</u>.

Rule 23(e)(2)(D) considers "whether the apportionment of relief among Class Members take[s] appropriate account of differences among their claims," *see* Rule 23(e)(2)(D) advisory committee's note to 2018 amendment. This factor "requires equity, not equality, and treating class members equitably does not necessarily mean treating them all equally." *In re Blue Cross Blue Shield Antitrust Litig.*, 85 F.4th 1070, 1093 (11th Cir. 2023). In other words, "the court's goal is to ensure that similarly situated class members are treated similarly and that dissimilarly situated class members are not arbitrarily treated as if they were similarly situated." Newberg on Class Actions § 13:56. Here, class members are treated equitably despite the varying amounts paid by each Member due to the varying charges from the provider and PBRT dosage amounts they received.[3] The up to $75,000 in relief will be at or near full recovery for many Class Members.[4] As an example, according to one PBRT provider, the Oklahoma Proton Center, their average cost

---

[3] Discovery and discussions with Plaintiffs' experts confirmed that patients pay per radiation dosage of the PBRT and not one set price for the entire treatment. Accordingly, a patient who received twenty rounds of PBRT will pay less than a patient who received fifty rounds. (Ex. 3 ¶ 30).

[4] For example, Ms. Weissman paid $95,000, Mr. Cole paid $85,000, and Mr. Rizzuto paid $126,000 for PBRT. The $75,000 represents 79%, 88%, and 60% respectively of what the Plaintiffs paid.

for a course of PBRT ranges between $25,000 to $100,000.[5] The settlement here is an equitable and excellent result for the Class. Beyond monetary relief, Defendants have agreed to revise certain terms of the PBRT policy that Plaintiffs and their counsel believe will make it easier for cancer patients to seek insurance coverage for PBRT. (Ex. 2 ¶ 10).

## V. CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE.

Plaintiffs request that the Court certify a Settlement Class, and permit dissemination of notice concerning the Settlement. When "'confronted with a request for settlement-only class certification, a district court need not inquire whether the case, if tried, would present intractable management problems, for the proposal is that there be no trial.'" *Waste Mgmt. Holdings, Inc. v. Mowbray*, 208 F.3d 288, 298 (1st Cir. 2000) (quoting *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997)). Nevertheless, "[w]hen a settlement class is proposed, it is incumbent on the district court to give heightened scrutiny to the requirements of Rule 23 in order to protect absent class members*." In re Lupron*, 228 F.R.D. at 88. "This cautionary approach notwithstanding, the law favors class action settlements." *Id.*, (citing *City P'ship*, 100 F.3d at 1043). Further, the heightened scrutiny standard is tailored to situations where settlement occurs "particularly early in the case." Manual for Complex Litigation, Fourth, § 21.612. Thus, while the heightened scrutiny standard applies in this case, the concerns giving rise to the standard are absent here, i.e., the record has been extensively developed in this case and the discovery justifies certification.

"To obtain class certification, the plaintiff must establish the Rule 23(a) requirements of numerosity, commonality, typicality, and adequacy of representation and demonstrate that the action may be maintained under Rule 23(b)(1), (2), or (3)." *Hochstadt*, 708 F. Supp. 2d at 102

---

[5] *See* https://www.okcproton.com/proton-therapy-what-about-the-cost/ (last visited April 1, 2025).

(internal citation omitted). Here, Plaintiffs assert that, for the purpose of settlement only, the requirements of Rules 23(a), (b)(1) and (2) have been satisfied.

### A.    The Settlement Class is Sufficiently Numerous.

To satisfy numerosity, "[p]laintiffs must overcome a relatively 'low threshold,' which does not impose a precise numerical requirement." *Connor B. ex rel. Vigurs v. Patrick*, 272 F.R.D. 288, 292 (D. Mass. 2011) (citing *Garcia–Rubiera v. Calderon,* 570 F.3d 443, 460 (1st Cir. 2009)). "Although no specific threshold exists, a class size of forty or more will generally suffice in the First Circuit." *Reid v. Donelan*, 297 F.R.D. 185, 188-89 (D. Mass.) (citation omitted). Defendants have identified records of (i) 90 individuals who submitted post-service claims for PBRT and (ii) another 150 individuals who had their pre-authorization coverage requests denied all of whom will receive notice of the settlement. (Ex. 3 ¶ 26). The numerosity requirement of Rule 23 is met.

### B.    Questions of Law and Fact Are Common to All Settlement Class Members.

Rule 23(a)(2) requires class action plaintiffs to identify questions of law or fact common to the proposed class.  *See* Fed. R. Civ. P. 23(a)(2). "The threshold of commonality is not high." *In re Pharm. Indus. Average Wholesale Price Litig.*, 230 F.R.D. 61, 78 (D. Mass. 2005). "The test or standard for meeting the Rule 23(a)(2) prerequisite is qualitative rather than quantitative; that is, there need be only a single issue common to all members of the class. Therefore, this requirement is easily met in most cases." *Id*. Here, Plaintiffs' claims depend on the common contention that Defendants wrongfully denied insurance coverage for PBRT treatment by claiming it was "unproven," "experimental or investigational," or "not medically necessary" and forcing Plaintiffs and the Class Members to pay out-of-pocket for PBRT.

### C.    Plaintiffs' Claims Are Typical of Those of the Settlement Class.

Plaintiffs' claims are typical of the claims of the proposed Class they seek to represent

because Plaintiffs, like all Class Members, were diagnosed with prostate cancer, primary central nervous system cancer, or cervical/gynecological cancer, sought coverage for PBRT to treat their cancer, were denied, and subsequently paid out-of-pocket for to receive the treatment. "The typicality requirement is satisfied" when the defendant's conduct is the same throughout "and when the plaintiff's claims and those of the class are based on the same legal theory." *Dvornikov v. Landry's Inc.*, 2017 WL 1217110, at *9 (D. Mass. Mar. 31, 2017) (cleaned up).

### D.    <u>Plaintiffs and Their Counsel Are Adequate Representatives</u>.

To satisfy Rule 23(a)(4), the representative parties must "fairly and adequately represent the interests of the class." Fed. R. Civ. P. 23(a)(4). "Adequacy of representation is met by a two-part inquiry. The moving party must first show that the interests of the representative party will not conflict with the interests of the class members, and second, that counsel chosen by the representative party is qualified, experienced, and able to vigorously conduct the proposed litigation." *In re AVEO Pharm., Inc. Securities Litig.,* 2017 WL 5484672, at *4 (D. Mass. Nov. 14, 2017) (quoting *Andrews v. Bechtel Power Corp.,* 780 F.2d 124, 130 (1st Cir. 1985).

### 1.    *Plaintiffs Do Not Have Interest Antagonistic to Settlement Class Members*.

Plaintiffs do not have any interests that conflict with other Class Members and they will fairly and adequately represent and protect the interests of the other Class Members. (Ex. 3 ¶¶ 34-35). Plaintiffs are familiar with the facts of this case and will continue to protect the Class, as they have throughout this litigation. (*Id.*). The class definition includes only those individuals covered through an ERISA-governed plan issued or administered by Defendants and who had their request for PBRT treatment coverage denied and ultimately paid out-of-pocket for the medical expenses. Plaintiffs and absent class members share a common goal: to recover their out-of-pocket costs for PBRT treatment and to make it easier for patients to obtain coverage in the future.

## 2. *Class Counsel are Qualified and Experienced*.

The attorneys who seek to represent the settlement Class Members in this case are highly qualified to serve as Class Counsel. They bring a wealth of ERISA and class action experience and have devoted substantial time and resources to diligently litigate this case—including defeating Defendants' motion to dismiss. (Ex. 3 ¶¶ 2-5, 9-14). Class Counsel have adequately represented the interests of the Class Members and respectfully request appointment as Settlement Class Counsel under Rule 23(g)(3) and confirmed under 23(g)(1) upon final approval.

## B.     The Settlement Meets the Requirements of Rule 23(b)(1) and 23(b)(2).

A class action is maintainable under Rule 23(b)(1)(A) if "prosecution of separate actions by or against individual class members would create a risk of inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for the party opposing the class." (*Id*.). Here, if Class Members were to file separate lawsuits across the country seeking relief, some courts may find an ERISA violation and grant relief, whereas other courts could potentially find Defendants' conduct permissible. Pursuing similar claims for systemic reform through multiple individual suits would not only be inefficient, it would create a risk that different courts might order divergent or even conflicting relief.

Certification is also proper pursuant to Rule 23(b)(1)(B), which requires a showing that "adjudications with respect to individual class members that as a practical matter, would be dispositive of the interests of the other members not parties to the individual adjudications or would substantially impair or impede their ability to protect their interests." (*Id*.). ERISA requires that, where appropriate, plan provisions must be "applied consistently with respect to similarly situated claimants." 29 C.F.R. § 2560.503-1(b)(5). If this Court were to find Defendants' policies require Defendants "to act in a certain fashion, ERISA would require [Defendants] to act in a similar

fashion toward all beneficiaries—the quintessential (b)(1)(B) scenario." *Z.D. ex rel. J.D. v. Group Health Co-op.,* 2012 WL 1977962, at *7 (W.D. Wash. June 1, 2012); *see also Tracey v. MIT*, 2018 WL 5114167, at *6 (D. Mass. Oct. 19, 2018) ("an [ERISA] action for a breach of trust or other fiduciary duty" is "a classic example of cases typically certified under Rule 23(b)(1)(B)").

Certification is also proper pursuant to Rule 23(b)(2) when members of a class seek uniform injunctive or declaratory relief from policies or practices generally applicable to the whole class. *See e.g. Baby Neal for and by Kanter v. Casey*, 43 F.3d 48, 58 (3d Cir. 1994). That inquiry does not require a finding that all members of the class have suffered identical injuries. *Connor B.,* 272 F.R.D. at 295. The uniform nature of the allegedly unlawful PBRT denials here, coupled with the equitable relief in the form of the revised PBRT Medical Policy provided by the Settlement that will uniformly apply to all Class members (and others) going forward satisfies this standard.

C.  **The Class is Ascertainable and There Are No Difficulties Managing the Settlement**.

A proposed class is ascertainable if it is well defined and membership turns on objective criteria. *Matamoros v. Starbucks Corp,* 699 F.3d 129, 139 (1st Cir. 2012). Here the Settlement Class has been identified from Defendants' records. (Ex. 3 ¶ 26). Defendants have records of post-service claims for PBRT, i.e., where a person went forward with PBRT treatment and requested that Defendants cover the expenses. (*Id.*). Defendants also have records of requests for PBRT that were made pre-treatment. (*Id.*). While it is unknown if these individuals actually went forward with paying for PBRT or pursued another treatment, they will each be receiving notice with the opportunity to participate in the Settlement. (*Id.*). Although Defendants do not have information on the amounts actually paid out-of-pocket, there is an easy streamlined process for the Class Members to submit proof of payment.

## VI. THE COURT SHOULD APPOINT PROPOSED CLASS COUNSEL.

As explained above, undersigned counsel have significant experience litigating ERISA cases, class actions, and complex commercial cases. Counsel's investigation into these claims began more than six years ago, and since that time, Counsel have done significant formal and informal investigation into the claims, performed extensive discovery in this case, and worked closely with industry experts, among other things. Because undersigned counsel are highly qualified and determined to represent the best interests of the Class, the Court should appoint them Class Counsel moving forward.

## VII. THE COURT SHOULD APPROVE THE NOTICE PLAN

The Court must ensure that notice is sent in a reasonable manner to all class members who would be bound by the settlement. Fed. R. Civ. P. 23(e)(1)(B). Federal Rule of Civil Procedure 23(c)(2)(A) states that the court "may direct appropriate notice to the class" if certified under Rule 23(b)(1) or (2) (*Id*.). Here, notice includes individual direct mail notice to all Class Members. (Ex. 1 ¶ 10). Defendants have addresses for each of the 240 people that will receive notice. The Settlement Administrator will be directed to utilize skip trace technology for notices that are undeliverable. (*Id*. ¶¶ 10(b-c)). The direct mail notice to the Class Members by the Claims Administrator is presumptively reasonable and appropriate.[6] *See Phillips Petroleum Co. v. Shutts,* 472 U.S. 797, 812 (1985).

The content of the Class Notice is also reasonable. The Class Notice includes, among other things: a summary of the lawsuit; a description of the material terms of the Settlement; a disclosure of the release; instructions for submitting claims; instructions as to how and when to object to the Settlement; the date, time, and location of the final approval hearing; and contact information for

---

[6] Here, the notice, while not required, satisfies due process.

the Settlement Administrator and Class Counsel. (*See* Ex. 1 at Exhibit A). Further, a settlement website will be established and contain important documents and information regarding the settlement. This Notice is reasonable as it "fairly apprise[s] the prospective members of the class of the terms of the proposed settlement and of the options that are open to them." *Hill,* 2015 WL 127728, at *15 (internal citations omitted).

The Settlement Administrator, Rust Consulting, Inc., has extensive experience administering class action settlements. Plaintiffs respectfully request that the Court approve the Notice program, appoint Rust Consulting as the Settlement Administrator and direct them to affect the Notice to the Settlement Payment Class and establish the Settlement Website.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the Motion for Preliminary Approval, and enter the Proposed Order which *inter alia*: (1) grants preliminary approval of the Settlement as fair, reasonable, and adequate, and in the best interests of the Class Members; (2) certifies the proposed Class for settlement purposes only; (3) appoints the law firm of Arnall Golden Gregory LLP, Colson Hicks Eidson, Kantor & Kantor LLP, and Kozyak, Tropin & Throckmorton LLP as Class Counsel; (4) approves the form and content of, and directs the distribution of the proposed Class Notice and accompanying Claim Form Instructions and Claim Form; and (5) schedules a Final Approval Hearing in approximately 130 days.

<u>**Conferral Under Local Rule 7.1(a)(2).**</u>

Plaintiffs have conferred with the Defendants, and while disputing Plaintiffs' claims in this

litigation. Defendants do not oppose the relief sought in this motion.

Dated: May 9, 2025.


Respectfully submitted,

Plaintiffs and the Proposed Settlement Class
By Their Attorneys,

<u>/s/ *Robert J. Neary*</u>

| | |
|---|---|
| Richard T. Collins, *Pro Hac Vice*<br>Landen Benson<br>**ARNALL GOLDEN GREGORY, LLP**<br>2100 Pennsylvania Avenue NW<br>Suite 350S<br>Washington, D.C. 2003<br>Telephone: (202) 677-4030 | Lisa S. Kantor, *Pro Hac Vice*<br>Timothy J. Rozelle, *Pro Hac Vice*<br>**KANTOR & KANTOR, LLP**<br>19839 Nordhoff Street<br>Northridge, CA 91324<br>Telephone:   (818) 886-2525<br>Facsimile:   (818) 350-6272<br>lkantor@kantorlaw.net<br>trozelle@kantorlaw.net |
| Stephanie A Casey, *Pro Hac Vice*<br>**COLSON HICKS EIDSON**<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134<br>Telephone: 305-476-7400<br>Fax: 305-476-7444<br>scasey@colson.com | Maria Dolores Garcia, *Pro Hac Vice*<br>Robert John Neary, *Pro Hac Vice*<br>**KOZYAK TROPIN &**<br>**THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone: 305-372-1800<br>Fax: 305-372-3508<br>mgarcia@kttlaw.com<br>rn@kttlaw.com |
| Mala M. Rafik<br>**ROSENFELD & RAFIK, P.C.**<br>184 High Street, Suite 503<br>Boston, MA  02110<br>Telephone:   (617) 723-7470<br>Facsimile:   (617) 227-2843<br>mmr@rosenfeld.com | |