**UNITED STATES DISTRICT COURT**

**DISTRICT OF MASSACHUSETTS**

| | |
|---|---|
| KATE WEISSMAN,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICE, LLC, AND INTERPUBLIC GROUP OF COMPANIES, INC. CHOICE PLUS PLAN,<br><br>Defendants. | **CIVIL ACTION NO. 1:19-cv-10580**<br><br>**Consolidated with 1:19-cv-12224; and**<br>**Consolidated with 1:19-cv-12239**<br><br>**<u>CLASS ACTION</u>** |
| RICHARD COLE,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY,<br><br>Defendants. | CIVIL ACTION NO. 1:19-cv-12224 |
| ZACHARY RIZZUTO,<br><br>Plaintiff,<br><br>v.<br><br>UNITED HEALTHCARE INSURANCE COMPANY, UNITED HEALTHCARE SERVICE, INC., and THE HERTZ CUSTOM BENEFIT PROGRAM,<br><br>Defendants. | CIVIL ACTION NO. 1:19-cv-12239 |

**MEMORANDUM OF LAW IN SUPPORT OF MOTION FOR ATTORNEYS' FEES, REIMBURSEMENT OF EXPENSES, AND REQUEST FOR PLAINTIFF SERVICE AWARDS**

## INTRODUCTION

On May 13, 2025, this Court granted preliminary approval of a class action settlement between Plaintiffs Kate Weissman, Richard Cole, and Zachary Rizzuto ("Plaintiffs") and Defendants UnitedHealthcare Insurance Company, UnitedHealthcare Service, Inc., Interpublic Group of Companies, Inc., Choice Plus Plan, and The Hertz Custom Benefit Program ("Defendants").[1] The Court preliminarily appointed as Class Counsel the law firms of Arnall Golden Gregory LLP, Colson Hicks Eidson, Kantor & Kantor LLP, and Kozyak, Tropin & Throckmorton LLP.[2] The Court also preliminarily appointed the Plaintiffs as Class Representatives.[3]

Class Counsel now respectfully submit their motion and this memorandum of law in support of their application, pursuant to Rules 23(h) and 54(d)(2) of the Federal Rules of Civil Procedure, for an award of $2,500,000 to cover attorneys' fees, litigation expenses, settlement administration costs, and plaintiff service awards. This amount is separate and apart from the financial and other benefits to the class.[4]

## PRELIMINARY STATEMENT

After six years of litigation including nearly two years of settlement negotiations, the parties reached a Settlement Agreement that: (1) creates a fund of $6.75 million to allow individuals who had certain types of cancer and were denied insurance coverage for Proton Beam Radiation Therapy (PBRT) to seek up to $75,000 in reimbursement for that treatment;[5] and (2)

---

[1] ECF 116.
[2] *Id.* at ¶ 5.
[3] *Id.* at ¶ 4.
[4] ECF 115, p. 2.
[5] If claims for reimbursements exceed the $6.75 million cap, individual reimbursements will be reduced on a *pro rata* basis. (ECF 115-3, ¶ 29.)

requires changes to UnitedHealthcare's PBRT Medical Policy that makes clear that requests for PBRT coverage will be individually evaluated.[6] As part of the agreement, Defendants agreed to pay attorneys' fees and litigation costs, including settlement administration costs and plaintiff service awards, separate and apart from the amounts paid to the class members, provided that the amount awarded by the Court does not exceed $2,000,000. Defendants also agreed to allow Plaintiffs to request an additional $500,000 to cover these fees and expenses, for a total of $2.5 million.[7]

The procedural history of this matter was set forth in the Motion and will not be repeated here. The substantial and certain recovery obtained for the class was achieved through the efforts, skill, experience, and effective advocacy of Class Counsel over nearly six years. As the Class Counsel Declarations, filed concurrently, demonstrate, efforts of counsel included

- Conducting a comprehensive investigation of the events underlying the claims alleged by Class Representatives:
- Researching the applicable law with respect to Plaintiffs' claims and Defendants' anticipated defenses;
- Drafting a comprehensive complaint after consolidation of two matters transferred to this Court;
- Opposing Defendants' motion to dismiss;
- Engaging in extensive written discovery;
- Deposing UnitedHealthcare's corporate representative;
- Reviewing and analyzing voluminous documents;

[6] ECF 115-2, ¶ 10.
[7] ECF 115-1, ¶8.

- Analyzing and proposing multiple revisions to Defendants' PBRT Medical Policy;
- Consulting with industry and medical experts;
- Preparing detailed mediation statements and participating in multiple mediations and extended settlement negotiations;
- Negotiating and documenting the Settlement Agreement and class notices; and
- Assisting Class members (in the future) with the settlement claim process.[8]

Class Counsel's efforts to date have been without compensation of any kind for their prosecution of this case, which required them to devote over 5,600 hours of billable time, and risk $260,000 in litigation expenses.[9] The recovery of any fees or expenses has been wholly contingent upon the result achieved.[10] Class Counsel's request for $2.5 million would equate to less than 25% of the value of the settlement.[11] This amount will also cover the settlement administration costs, estimated at $234,090[12]and the service awards, totaling $75,000.[13] The remaining amount available for fees and costs is approximately $2,190,910, less than 60% of the total amount of fees and costs incurred by plaintiffs' counsel.[14] This request is clearly reasonable.

---

[8] Declaration of Richard T. Collins and Landen P. Benson in Support of Plaintiffs' Motion for Attorney Fees and Request for Plaintiff Service Awards ("Collins/Benson Dec.") Declaration of Stephanie A. Casey in Support of Plaintiffs' Motion for Attorney Fees ("Casey Dec."); Declaration of Maria D. Garcia and Robert J. Neary in Support of Plaintiffs' Motion for Attorney Fees ("Garcia/Neary Dec."); Declaration of Lisa S. Kantor and Tim Rozelle in Support of Plaintiffs' Motion for Attorney Fees, Reimbursement of Expenses and Request for Plaintiff Service Awards ("Kantor/Rozelle Dec.").

[9] Collins/Benson Dec., ¶¶ 7, 8, 9, 16 and Exhs. A, B, C; Casey Dec., ¶¶ 8, 10, 11 and Exhs. A, B; Garcia/Neary Dec., ¶¶ 7, 10, 11, 12, 14 and Exhs. A, B; Kantor/Rozelle Dec., ¶¶ 8, 10, 11, 15 and Exhs. A, B, C (Table of Fees and Costs).

[10] Collins/Benson Dec., ¶ 17; Casey Dec., ¶ 16; Garcia/Neary Dec., ¶ 15; Kantor/Rozelle Dec., ¶ 12.

[11] ECF 115-1, ¶ 8; Declaration of Frank Fox in Support of Plaintiffs' Motion for Award of Attorney's Fees and Costs ("Fox Dec."), ¶ III.5.

[12] ECF 115-1, ¶ 8; Garcia/Neary Dec., ¶ 9.

[13] ECF 115-1, ¶ 8; Collins/Benson Dec., ¶ 19; Case Dec., ¶s 18-20; Garcia/Neary Dec., ¶ 17.

[14] Kantor/Rozelle Dec., ¶15, Exh. C (Table of Fees and Costs).

## ARGUMENT

### I. Class Counsel Is Entitled to an Award of Reasonable Attorneys' Fees

Rule 23(h) of the Federal Rules of Civil Procedure provides that "[i]n a certified class action, the court may award reasonable attorney's fees and nontaxable costs that are authorized by law or by the parties' agreement."

This matter was brought under the Employee Retirement Income Security Act of 1974 ("ERISA"), which provides an independent avenue for fees through under 29 U.S.C. §1132 (g)(1). Plaintiffs satisfy the criteria for such an award as they have "achieved 'some degree of success on the merits.'" *Hardt v. Reliance Standard Life Ins. Co.,* 130 S.Ct. 2149 (2010). "The statutory standard is satisfied as long as the merits outcome produces some meaningful benefit for the fee-seeker." *Gastronomical Workers Union Local 610 v. Dorado Beach*, 617 F.3d 54, 66 (1st Cir. 2010) (citing *Hardt,* 130 S.Ct. at 2157).

In this case, the parties agreed that the attorneys' fees, litigation expenses and costs, settlement administration costs, and service awards would be reimbursed separately from amounts due to the class. Class Counsel's remuneration was not considered until after reaching agreement on the relief offered to the class.[15] Separating attorneys' fees from the amount paid to the class "is preferable" because it "avoids potential conflicts with the class." *Hart v. BHH, LLC*, 334 F.R.D. 74, 79 (S.D.N.Y. 2020). Where, as here, "money paid to the attorneys is entirely independent of money awarded to the class, the Court's fiduciary role in overseeing the award is greatly reduced, because there is no conflict of interest between attorneys and class members." *McBean v. City of New York*, 233 F.R.D. 377, 392 (S.D.N.Y. 2006). *See also Rossi v. Proctor & Gamble Co.,* 2013

[15] Collins/Benson Dec., ¶ 18; Casey Dec., ¶ 19; Garcia/Neary Dec., ¶ 16; Kantor/Rozelle Dec., ¶ 7.

WL 5523098, at *9 (D.N.J. Oct. 3, 2013) ("[C]ourts routinely approve agreed-upon attorneys' fees awards paid by the defendant, rather than the class members, especially where that amount is independent of the benefit obtained for the class."); *Bussie v. Allamerica Fin. Corp*., 1999 WL 342042, at *3 (D. Mass. May 19, 1999) (approving such separately paid fees).

## II. The Attorneys' Fees Requested Are Reasonable

The First Circuit traditionally directed district courts to compute fees requested by class action counsel by using the time-and-rate-based lodestar method. "Although the lodestar method is entrenched in the statutory fee-shifting context, . . . courts have looked elsewhere in "common fund" cases . . in which "a litigant or lawyer who recovers a common fund for the benefit of persons other than himself or his client is entitled to a reasonable attorney's fee from the fund as a whole." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56 F.3d 295, 305 (1st Cir. 1995) (quoting *Boeing Co. v. Van Gemert,* 444 U.S. 472, 478, 100 S.Ct. 745, 749(1980)). "The [percentage of fund] POF method represents one such alternative approach to fee-setting. This method functions exactly as the name implies: the court shapes the counsel fee based on what it determines is a reasonable percentage of the fund recovered for those benefitted by the litigation." *Ibid* (citations omitted).

The Supreme Court has endorsed the POF, stating that "under the common fund doctrine... a reasonable fee is based on a percentage of the fund bestowed on the class." *Blum v. Stenson*, 465 U.S. 886, 900 n.16 (1984). The First Circuit also endorses this method in common fund cases, noting that it is the prevailing method and that it "offers significant structural advantages in common fund cases, including ease of administration, efficiency, and a close approximation of the marketplace." *In re Thirteen Appeals Arising Out of San Juan Dupont Plaza Hotel Fire Litig.*, 56

F.3d at 308. Indeed, the percentage method "appropriately aligns the interests of the class with the interests of the class counsel[,] ... is 'less burdensome to administer than the lodestar method,' ... 'enhances efficiency' and does not create a 'disincentive for the early settlement of cases."' *Duhaime v. John Hancock Mut. Life Ins. Co.,* 989 F. Supp. 375, 377 (D. Mass. 1997) (quoting *Thirteen Appeals*, 56 F.3d at 307).

While here a common fund was not technically created, the potential monetary recovery of up to $6.75 million available to the class along with the attorneys' fees and litigation expenses (up to $2.5 million subject to Court approval),[16] yields a total of $9.25 million. In addition, Dr. Frank Fox has estimated that the value of the change in UnitedHealthcare's PBRT Medical Policy to future UnitedHealthcare members will be over $1,000,000 *per year*.[17] This brings the total value of the settlement to over $10 million.

The total lodestar expended by Class Counsel is $3,510,509.25.[18] This amount does not take into account the additional hours of attorney time to seek final approval and time expected to assist class members with the settlement process, which could be hundreds of hours based on the experience of Class Counsel when working on similar settlements.[19]

The lodestar is approximately 35% of the total "fund." But counsel are asking for only $2.5 million, which represents only 25% of the total "fund." This is both reasonable under the circumstances and well within the typical range of percentage fees awarded in the First Circuit.

---

[16] Motion for Preliminary Approval of Class Action Settlement, Exh. 1, ¶ 8.
[17] Fox Dec., ¶ III.5.
[18] Collins/Benson Dec., ¶s 8, 16 and Exhs. B, C; Casey Dec., ¶ 11 and Exh. B; Garcia/Neary Dec., ¶ 10 and Exh. B; Kantor/Rozelle Dec., ¶10, 15 and Exhs. B, C.
[18] Collins/Benson Dec., ¶ 17; Casey Dec., ¶ 16; Garcia/Neary Dec., ¶13; Kantor/Rozelle Dec., ¶ 11.
[19] Collins/Benson Dec., ¶ 14; Casey Dec., ¶ 14; Garcia/Neary Dec., ¶ 10 and Exh. B; Kantor/Rozelle Dec., ¶10, 15 and Exhs. B, C.

*See, e.g.*, *Mongue v. Wheatleigh Corp.*, 2024 WL 1659724, at *4 (D. Mass. Apr. 16, 2024) (approving attorney fee award of 27.2 % of the settlement fund); *Ford v. Takeda Pharms. U.S.A., Inc.*, 2023 WL 3679031, at *3 (D. Mass. Mar. 31, 2023) (approving attorney fee award of 33% of the settlement fund); *In re Intuniv Antitrust Litig.,* 2022 WL 398744, at *1 (D. Mass. Jan. 26, 2022) (approving attorney fee award of 25 percent of the settlement fund).

## III. Factors Considered by Courts in the First Circuit Confirm that the Requested Fee Is Fair and Reasonable

While "[t]he First Circuit has not endorsed a specified set of factors to be used in determining whether a fee request is reasonable," *In re Relafen Antitrust Litig.,* 231 F.R.D. 52, 79 (D. Mass. 2005), courts in this Circuit consider several factors when considering an award of attorneys' fees, including: "(1) the size of the fund and the number of persons benefitted; (2) the skill, experience, and efficiency of the attorneys involved; (3) the complexity and duration of the litigation; (4) the risks of the litigation; (5) the amount of time devoted to the case by counsel; (6) awards in similar cases; and (7) public policy considerations, if any." *Hill v. State St. Corp.,* 2015 WL 127728, at *17 (D. Mass. Jan. 8, 2015) (citing *In re Puerto Rican Cabotage Antitrust Litig.,* 815 F. Supp. 2d 448, 458 (D.P.R. 2011)). *See also Medoff v. CVS Caremark Corp.*, 2016 WL 632238, at *8 (D.R.I. Feb. 17, 2016) (same). As set forth below, all of these factors weigh strongly in favor of finding that the requested fee award is reasonable.

### A. The Benefits to Class Members And Future Cancer Patients Support the Requested Fee

Courts consistently have recognized that the result achieved is one of the most important factors to be considered in making a fee award. *See Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983) ("[T]he most critical factor is the degree of success obtained."); *see also In re Puerto Rican*

*Cabotage Antitrust Litig.,* 815 F. Supp. 2d at 458 ("[T]he net dollars and cents results achieved by counsel for their clients is often the most influential factor in assessing the reasonableness of any attorneys' fee award."). The results Class Counsel achieved for the Class, while avoiding the necessity and risk of prolonged litigation, are compelling, and include the following:

- Class members may submit claims for reimbursement of out-of-pocket medical costs for the payment of PBRT treatment in an amount up to $75,000. The total reimbursement is subject to an aggregate cap of $6.75 million.[20]
- UnitedHealthcare's PBRT Medical Policy will be revised, making it easier for patients to have their requests for coverage for PBRT treatment approved. These changes have an estimated value of over $1 million per year.[21]
- Defendants have separately agreed to pay $2 million to cover (i) reasonable attorneys' fees; (ii) litigation related costs; (iii) class representative awards; and (iv) settlement administrative costs and to allow Plaintiffs to seek an additional $500,000 to cover these amounts, for a total of $2.5 million.[22]

The settlement has benefited class members with three types of cancers by allowing them to seek reimbursement for life-saving treatment which they had to pay for out of their own pockets. The settlement also changes the landscape for future cancer patients, whose claims will now be evaluated under guidelines which make it easier for them to obtain approval of PBRT treatment. The new guidelines eliminate specific reference to thirteen diagnoses as to which PBRT was previously deemed "unproven and not medically necessary." The new guidelines also recognize that PBRT is proven and considered clinically equivalent to traditional radiation for treating

[20] ECF 115-1, ¶ 8.
[21] Fox Dec., ¶ III.5.
[22] ECF 115-1, ¶ 8.

prostate cancer and allows patients to obtain PBRT treatment by submitting documentation demonstrating that sparing surrounding normal tissue cannot be achieved with traditional radiation.[23]

These benefits provide strong support for Plaintiffs' request that the Court award $2.5 million, to be paid separate and apart from the class fund, to cover attorney fees and costs, class representative awards, and settlement administration expenses.

### B. The Skill and Experience of Counsel Support the Requested Fee

The prosecution and management of a complex nationwide insurance benefits class action requires unique legal skills and abilities with expertise in both ERISA and state insurance claims for benefits and class actions. As demonstrated by Class Counsel's experience, they were the perfect mix of class, health insurance, and ERISA firms to achieve this result. Class Counsel here are experienced and skilled practitioners in the ERISA and class action fields and have long and successful track records in such cases.[24] Their willingness and ability to undertake complex and difficult cases such as this, which are critically important to families seeking coverage for life-threatening cancer diagnoses, and their commitment to the litigation, were invaluable to the case and settlement negotiations. *See Hill,* 2015 WL 127728, at *17 (noting plaintiffs' counsel's "experience and expertise contributed to the achievement of the Settlement"); *Bezdek v. Vibram USA Inc.,* 79 F. Supp. 3d 324, 350 (D. Mass. 2015) (finding skill of lawyers "nationally known for and greatly experienced in representing plaintiffs" in class action lawsuits weighed in favor of fee award).

---

[23] ECF 115-1, ¶ 7; ECF 115-2, ¶¶ 10-13.
[24] ECF 115-3, ¶¶ 2-5, 9-14.

The quality of the work performed by Class Counsel in attaining the settlement should also be evaluated in light of the quality of the opposition. *See In re Xcel Energy, Inc., Sec., Derivative & "ERISA" Litig.,* 364 F. Supp. 2d 980, 995-96 (D. Minn. 2005) ("Defendants' attorneys ... consistently put plaintiffs' counsel through the paces. All counsel consistently demonstrated considerable skill and cooperation to bring this matter to an amicable conclusion. Thus, the effort of counsel in efficiently bringing this case to fair, reasonable and adequate resolution is the best indicator of the experience and ability of the attorneys involved . . .) Here, Defendants have been represented by highly experienced lawyers from Hogan Lovells, a well-respected national law firm known for their vigorous defense in cases such as this one.

Notwithstanding this formidable opposition, Class Counsel were able to settle the action on terms highly favorable to the class. *See Schwartz v. TXU Corp*., 2005 WL 3148350, at *30 (N.D. Tex. Nov. 8, 2005) ("The ability of plaintiffs' counsel to obtain such a favorable settlement for the Class in the face of such formidable legal opposition confirms the superior quality of their representation."). Accordingly, this factor further supports the requested attorneys' fees.

**C. The Complexity and Duration of the Litigation Support the Requested Fee**

ERISA class actions are notoriously complex and difficult to prove. *Takeda Pharms.,* 2023 WL 3679031, at *1("ERISA claims are complicated.")

This case was no exception. Among other things, Class Counsel needed to develop an understanding of the full landscape of PBRT treatment and traditional radiation treatment, including the medical research regarding the effectiveness and appropriateness of PBRT for different types of cancers. Counsel also had to understand the complex medical billing system applicable to both PBRT and traditional radiation treatment so as to analyze the data provided by UnitedHealthcare. Counsel consulted with both medical experts and billing experts so that they

fully understood the scope of appropriate relief needed by the class. Counsel also had to analyze and understand the UnitedHealthcare guidelines as well as other guidelines utilized by nonprofit and other groups supporting PBRT. And Counsel had to understand the applicable plan language and ERISA regulations so as to craft relief that was consistent with the rights of all plan participants. The complexity is evidenced by the fact that it took two years, four (4) in-person mediations, and numerous conference calls with the mediator to reach a settlement agreement.

Accordingly, the challenging legal work and complexity of this matter support the conclusion that the requested fee is fair and reasonable in light of the results achieved for the Class.

**D. The Risk of Non-Payment Was High in This Case**

In a case undertaken on a contingent fee basis, the risk of the litigation is a key factor in determining an appropriate fee award. *See Roberts v. TJX Cos., Inc.,* 2016 WL 8677312, at *13 (D. Mass. Sept. 30, 2016) ("[M]ost importantly, Class Counsel took the case on a contingency fee basis, assuming significant risk in litigating the case."); *Hill,* 2015 WL 127728, at *18 ("consider[ing] ... contingency risk in awarding attorneys' fees" when counsel "litigated the Action on a fully contingent basis and were exposed to the risk that they might obtain no compensation for their efforts on behalf of the class").

Although Class Counsel believed in the strength of their case, there was a significant risk that the case could be litigated for many years but result in no recovery for the class and no payment for counsel. *See Wit,* 58 F.4th 1080 (9th Cir. 2023). Specifically, Class Counsel faced substantial risks that Plaintiffs' motion for class certification would be denied, that they would not be able to prove that Defendants' denials violated ERISA or the terms of their policies, that the class was entitled to reimbursement for their out-of-pocket expenses, or that UnitedHealthcare's guidelines had to be revised. Therefore, in the absence of a settlement, the class faced a very substantial

litigation risk with no guarantee of a greater recovery.[25] Despite these very real risks, Class Counsel pushed forward and worked vigorously to achieve a significant result for the class. Under these circumstances, the requested fee is fully appropriate.

### E. The Amount of Time Devoted to the Litigation by Class Counsel Supports the Requested Fee

The extensive time and effort expended by Class Counsel in prosecuting the litigation and achieving the settlement over the last six plus years also establishes that the requested fee is justified and reasonable. *See Hill,* 2015 WL 127728, at *19. Class Counsel's declarations detail their efforts in prosecuting Plaintiffs' claims. Class Counsel spent over 5600 hours of attorney and other professional support staff prosecuting the litigation. Based on counsel's rates, their collective lodestar is over $3.5 million. A 2.5 million award, which also must cover costs, administrative expenses, and class representative awards, represents approximately 70% of counsel's lodestar.[26] The substantial time and effort devoted to this case was critical in obtaining the favorable result achieved by the Settlement and confirm that the fee request here is reasonable.

Moreover, the legal work on this action will not end with the Court's approval of the proposed settlement. Based on the experience of Class Counsel with similar settlements, it is expected that hundreds of additional attorney hours will necessarily be expended seeking final approval, assisting members of the Class with their claim submissions, overseeing the claims process, responding to class member inquiries, assisting class members in obtaining necessary documentation, and monitoring defendants' adherence to the injunctive relief.[27]

---

[25] *See* ECF 116, ¶ 6(c).

[26] Collins/Benson Dec., ¶s 7, 8, 9, 16 and Exhs. A, B, C; Casey Dec., ¶s 8, 10, 11 and Exhs. A, B; "Garcia/Neary Dec., ¶s 7, 10, 11, 12, 14 and Exhs. A, B; Kantor/Rozelle Dec., ¶s 8, 10, 11, 15 and Exhs. A, B, C.

[27] Collins/Benson Dec., ¶ 14; Casey Dec., ¶ 14; Garcia/Neary Dec., ¶ 10; Kantor/Rozelle Dec., ¶10.

**F. Awards in Similar Cases Support the Requested Fee**

As discussed above, Class Counsel's requested fee of an amount that equates to less than 25% of the value of the total settlement and is less than the lodestar is well within the range of fee awards in class action cases in this Circuit and elsewhere. *See In re Relafen Antitrust Litig.,* 231 F.R.D. at 82 (finding a "multiplier of 2.02" to be "appropriate" based on comparison of cases); *see also Long v. HSBC USA Inc.,* No. 14 CIV. 6233, 2016 WL 4764939, at *12 (S.D.N.Y. Sept. 13, 2016) ("a multiplier near 2 should, in most cases, be sufficient compensation for the risk associated with contingent fees in FLSA cases") (quoting *Sakiko Fujiwara v. Sushi Yasuda Ltd.,* 58 F. Supp. 3d 424, 438–39 (S.D.N.Y. 2014)). Thus, this factor strongly supports the reasonableness of the requested fee.

**G. Public Policy Considerations Support the Requested Fee**

Public policy supports rewarding counsel for prosecuting ERISA benefits class actions, and health insurance coverage actions more generally. Health insurance cases rarely find their way to the courts, with the majority of ERISA litigation focusing on disability cases. This is due to several reasons. Claimants are often unpresented during the internal appeals process and do not understand the limitations of the ERISA-adopted administrative scheme in litigation. Accordingly, lawyers often must decline ERISA health insurance cases because the record is poorly developed prior to litigation. In addition, attorneys are often reluctant to file litigation where the amount of benefits in dispute is less than the time required to pursue the case to judgment. It is difficult to find a way in which for attorneys to be paid for their work as the plaintiffs either have paid or owe for treatment, requiring any settlement or judgment to be higher than the benefits at issue.[28]

[28] Kantor/Rozelle Dec., ¶ 14.

## IV. The Expenses Incurred Are Reasonable and Were Necessary to Achieve the Benefit Obtained

Class Counsel's fee application includes a request for payment of litigation expenses that were reasonable and necessary to the prosecution of the litigation. *See, e.g., In re Fidelity/Micron Sec. Litig.,* 167 F.3d 735, 737 (1st Cir. 1999) ("[L]aw firms are not eleemosynary institutions, and lawyers whose efforts succeed in creating a common fund for the benefit of a class are entitled not only to reasonable fees, but also to recover from the fund, as a general matter, expenses, reasonable in amount, that were necessary to bring the action to a climax."). In this case, there is no common fund, so there is no concern that the expenses would deplete a common fund.

Class Counsel's expense request of $260,616.20 is reasonable and should be approved. The vast majority of expenses relate to e-discovery, experts, and mediation expenses.[29] These expenses were necessarily incurred in litigation and routinely charged to clients.

Class Counsel respectfully submits that these expenses were reasonably and necessarily incurred in prosecuting this action and should be awarded. *See, e.g., In re Global Crossing Sec. & ERISA Litig.,* 225 F.R.D. 436, 468 (S.D.N.Y. 2004) ("The expenses incurred - which include investigative and expert witnesses, filing fees, service of process, travel, legal research and document production and review - are the type for which the paying, arms' length market reimburses attorneys. For this reason, they are properly chargeable to the Settlement fund."); *see also Anwar v. Fairfield Greenwich Ltd.,* 2012 WL 1981505, at *3 (S.D.N.Y. June 1, 2012) ("Here, Plaintiffs' Counsel seek reimbursement for expenses such as mediation fees, expert witness fees, electronic legal research, photocopying, postage, and travel expenses, each of which is the type

[29] Collins/Benson Dec., ¶s 7, 8, 9, 16 and Exhs. A, B, C; Casey Dec., ¶s 8, 10, 11 and Exhs. A, B; Garcia/Neary Dec., ¶s 7, 10, 11, 12, 14 and Exhs. A, B; Kantor/Rozelle Dec., ¶s 8, 10, 11, 15 and Exhs. A, B, C.

the paying, arms' length market reimburses attorneys ….. As such, these expenses shall be reimbursed."); *Barbosa v. Cargill Meat Sols. Corp.,* 297 F.R.D. 431, 454 (E.D. Cal. 2013) (noting "travel, mediation fees, photocopying, … delivery and mail charges" are "routinely reimbursed").

## V. The Requested Service Awards to Plaintiffs Are Reasonable and Unopposed

The Settlement agreement includes an award of $25,000 to each class representative, to be paid from the $2.5 million requested by this motion. These proposed service awards are fair and reasonable and are not opposed. *See, e.g., In re Relafen Antitrust Litig.,* 231 F.R.D. at 82 ("Incentive awards are recognized as serving an important function in promoting class action settlements, particularly where as here, the named plaintiffs participated actively in the litigation"); *In re Compact Disc Min. Adver. Price Antitrust Litig.,* 292 F. Supp. 2d 184, 189 (D. Me. 2003) ("Because a named plaintiff is an essential ingredient of any class action, an incentive award can be appropriate to encourage or induce an individual to participate in the suit"); *Sheppard v. Consol. Edison Co. of New York,* No. 94-CV-0403(JG), 2002 WL 2003206, at *5-6 (E.D.N.Y. Aug. 1, 2002) (collecting cases approving service awards). As one court noted: "[s]ervice awards are common in class action cases and serve to compensate plaintiffs for the time and effort expended in assisting the prosecution of the litigation, the risks incurred by becoming and continuing as a litigant, and any other burdens sustained by the plaintiffs. It is important to compensate plaintiffs for the time they spend and the risks they take." *Beckman v. KeyBank, N.A.,* 293 F.R.D. 467, 483 (S.D.N.Y. Apr. 29, 2013).

Plaintiffs actively and effectively fulfilled their obligations as representatives of the Class, complying with the demands placed upon them, and providing valuable assistance to Class Counsel. Indeed, Plaintiffs were actively involved in the case from start to finish. For example,

Plaintiffs: (1) located and produced documents relevant to UnitedHealthcare and PBRT treatment; (2) searched for ESI in their email accounts; (2) spent hours on phone calls with Class Counsel; (3) reviewed and approved the multiple rounds of pleadings; (4) reviewed Defendants' discovery requests and assisted in providing responses; (5) reviewed key orders; (6) discussed case strategy with Class Counsel; (7) discussed settlement status; (8) attended the in-person mediation sessions; and (9) provided input during the mediation process and participated in negotiation of the Settlement terms.[30] These actions are precisely the type that support reimbursement to representative parties.

Thus, in recognition of Plaintiffs' time and effort expended for the benefit of the Class, Class Counsel respectfully requests a compensatory award of $25,000 each to the three Plaintiffs This amount is reasonable and fully justified based on Plaintiffs' extensive involvement in this litigation and the amount of time devoted for the benefit of the Class. *See*, *e.g., Godshall v. Franklin Mint Co.,* No. 01-CV-6539, 2004 WL 2745890, at *6 (E.D. Pa. Dec. 1, 2004) (awarding $20,000 service awards to each of two named plaintiffs); *Brotherton v. Cleveland,* 141 F. Supp. 2d 907, 914 (S.D. Ohio 2001) (granting a $50,000 service award where named plaintiff spent a considerable amount of time with Class Counsel working on the litigation.). Therefore, Class Counsel and Plaintiffs respectfully submit that these service awards should be granted.

**CONCLUSION**

For the reasons set forth above, Class Counsel respectfully requests that the Court enter an Order awarding them $2.5 million to cover fees, litigation costs, settlement administrative costs and service awards.

---

[30] Declaration of Zachary Rizzuto; Declaration of Kate Weissman; Declaration of Richard Cole; Casey Dec., ¶s 18-20; Collins/Benson Dec., ¶ 19; Garcia/Neary Dec., ¶ 17.

Dated: June 17, 2025

Plaintiffs and the Proposed Settlement Class
By Their Attorneys,

/s/ *Lisa S. Kantor*


| | |
|---|---|
| Richard T. Collins, *Pro Hac Vice*<br>Landen Benson<br>**ARNALL GOLDEN GREGORY, LLP**<br>2100 Pennsylvania Avenue NW<br>Suite 350S<br>Washington, D.C. 2003<br>Telephone: (202) 677-4030 | Lisa S. Kantor, *Pro Hac Vice*<br>Timothy J. Rozelle, *Pro Hac Vice*<br>**KANTOR & KANTOR, LLP**<br>19839 Nordhoff Street<br>Northridge, CA 91324<br>Telephone: (818) 886-2525<br>Facsimile: (818) 350-6272<br>lkantor@kantorlaw.net<br>trozelle@kantorlaw.net |
| Stephanie A Casey, *Pro Hac Vice*<br>**COLSON HICKS EIDSON**<br>255 Alhambra Circle, Penthouse<br>Coral Gables, FL 33134<br>Telephone: 305-476-7400<br>Fax: 305-476-7444<br>scasey@colson.com | Maria Dolores Garcia, *Pro Hac Vice*<br>Robert John Neary, *Pro Hac Vice*<br>**KOZYAK TROPIN & THROCKMORTON LLP**<br>2525 Ponce de Leon Blvd., 9th Floor<br>Coral Gables, FL 33134<br>Telephone: 305-372-1800<br>Fax: 305-372-3508<br>mgarcia@kttlaw.com<br>rn@kttlaw.com |
| Mala M. Rafik<br>**ROSENFELD & RAFIK, P.C.**<br>184 High Street, Suite 503<br>Boston, MA 02110<br>Telephone: (617) 723-7470<br>Facsimile: (617) 227-2843<br>mmr@rosenfeld.com | |


**Certificate of Service**

I certify that on June 17, 2025, a copy of this document was electronically filed through the ECF system and will be sent electronically to all persons identified in the Notice of Electronic Filing, and that paper copies will be sent to those indicated as nonregistered participants.

Dated: June 17, 2025

By: /s/ *Lisa S. Kantor*
Lisa S. Kantor